**In re ADOPTION OF HOWELL.**

[Cite as *In re Adoption of Howell* (1991), 77 Ohio App.3d 80.]

Court of Appeals of Ohio,
Lawrence County.

No. 1935.

Decided Sept. 9, 1991.

*Joseph L. Hale,* for appellant.

*David H. McCown,* for appellee.

HOFSTETTER, Judge.

This is an appeal from an interlocutory order of adoption entered by the Court of Common Pleas, Probate Division, Lawrence County, granting the petition of James and Eloise Howell for the adoption of their granddaughter, Mary Eloise Howell, born April 11, 1983.

The appellant, Nancy Howell Ratcliff, is the natural mother of said child and has presented the following assignments of error:

"I. The trial court's decision overruling appellant's motion to dismiss for want of subject matter jurisdiction due to a lack of compliance with the

mandatory provisions of Ohio Revised Code 3107.05(A)(4), 3107.10, 3107.11 and 3107.12 was in error.

"II. The manner in which the O.R.C. 3107.12 background investigation was conducted was prejudicial to the appellant, denied the trial court of information necessary to consider the adoption and contained an improper and unwarranted conclusion of law, all to the appellant's detriment and in denial of appellant's rights to due process.

"III. The trial court erred in overruling appellant's motion to appoint a guardian ad litem to protect the interests of the child sought to be adopted.

"IV. The trial court admitted, over objection, evidence of character and conduct, opinion and reputation evidence of character, evidence of convictions of crimes in such a way that was inconsistent with wording or intent of rule 608 and 609 of the Ohio Rules of Civil Evidence and was in error.

"V. The trial court's findings of fact relative to the date and the circumstances surrounding the 'placement' of Ellie was not supported by evidence and was in error.

"VI. The conclusion of law reached by the trial court that appellant's failure to support Ellie Howell during the year immediately preceding the filing of the petition for adoption was without justifiable cause was against the manifest weight of the evidence and was in error.

"VII. The trial court's conclusion of law that granting the adoption was in the best interests of Ellie was unsupported by the evidence and was in error.

"VIII. The trial court's decision overruling appellant's motion to dismiss for lack of subject matter jurisdiction due to petitioners-appellees' failure to file an affidavit pursuant to Ohio Revised Code 3109.27 was in error.

"IX. The trial court's decision to permit Petitioner–Appellant [sic] to file the Ohio Revised Code 3109.27 affidavit nearly eight months after the petition for adoption was filed and nearly six months after the hearing on the petition was conducted was in error.

"X. The trial court's decision overruling appellant's motion to dismiss for lack of subject matter jurisdiction due to Petitioner–Appellees' [sic] and the trial court's failure to comply with Ohio Revised Code 5103.16 was in error.

"XI. The trial court's decision overruling appellant's motion to vacate the interlocutory order of adoption was in error."

The natural parents of Mary Eloise Howell are Nancy Howell Ratcliff and James Milton Howell, now deceased. Nancy and James were married on December 11, 1982 and Nancy gave birth to Mary Eloise ("Ellie") Howell on April 11, 1983. The trial court found that Nancy and James were divorced in October, 1985 with Nancy having custody of the child pursuant to a separation

agreement. However, the record reflects that the judgment entry ordering their divorce grants custody to plaintiff, James Howell with an order for defendant, Nancy Howell to pay child support of twenty-five dollars per week. Although James had custody of Ellie, testimony was presented establishing that Nancy left Ellie in petitioners' care approximately one month after the divorce. It appears that James was in poor health and it is unclear to what extent he provided for the care or support of Ellie. It was established that as he became more debilitated the petitioners took responsibility for Ellie. James died on January 17, 1989. On January 19, 1989, petitioners, James and Eloise Howell, filed a petition to adopt Ellie alleging that Nancy Howell had failed to support or maintain contact with the child for over three years.

Appellant filed an objection to the adoption and on March 8, 1989 filed a motion to dismiss for lack of jurisdiction. On March 16, 1989 appellant filed a motion to appoint a guardian ad litem and an amended objection to the adoption.

A hearing on the petition for adoption was held on March 17, 1989 at which time the trial court denied appellant's motion for the appointment of a guardian ad litem. After a hearing on the matter was held, the court rendered a decision finding: (1) the consent of the natural mother was not necessary because she had failed to support the child for a period of over one year preceding the filing of the petition for adoption; (2) that the mother's failure to support was without justifiable cause; (3) that it is in the child's best interests that the petition be granted; and (4) that an interlocutory order of adoption be issued which would become final six months from January 19, 1989. The interlocutory order of adoption was entered on April 24, 1989.

On August 3, 1989, appellant filed a motion to dismiss based on lack of subject matter jurisdiction due to petitioners' failure to comply with R.C. 3109.27. On that same date, appellant also filed a motion to vacate the interlocutory order of adoption. A hearing was held and on October 13, 1989, the trial court denied appellant's motion to dismiss relative to R.C. 3109.27, the motion to dismiss relative to R.C. 5103.16 and the motion to vacate the interlocutory order of adoption. The court also entered a second interlocutory order of adoption to become final in six months. It is from this order appellant appeals. For clarity, appellant's assignments of error regarding the court's jurisdiction and procedural questions will be addressed first.

Appellant's first, fifth, eighth, ninth and tenth assignments of error are related and will be addressed together. In these assignments of error, appellant asserts that the trial court erred in overruling appellant's motions to dismiss for lack of subject matter jurisdiction and that the court erred in a finding of fact relative to the date the child was placed in the petitioners'

home. Appellant contends that appellees' failure to comply with R.C. 3107.-05(A)(4), 3107.10, 3107.11, 3107.12, 5103.16, and 3109.27 deprives the probate court of subject matter jurisdiction. These assignments of error are without merit.

■ R.C. 3107.05(A)(4) states:

"(A) A petition for adoption shall be prepared and filed according to the procedure for commencing an action under the Rules of Civil Procedure. It shall include the following information:

" * * *

"(4) The date of placement of a minor and the name of the person placing the minor;"

Appellant correctly notes that the petition for adoption states the date of placement as April 11, 1983. The testimony does establish that April 11, 1983 is not the date the child was placed in petitioners' home; however, appellant has failed to show any prejudice resulting from inclusion of the incorrect date on the petition. It is not clear from the testimony that Ellie was ever placed in the home of the petitioners for the purpose of adoption. The testimony simply establishes that Nancy left the child in their home. Petitioner Eloise Howell testified that Nancy left the child with her stating, "She's better off with you." Nancy Ratcliff's testimony indicated that she left the child with the petitioners for a week when she went into the hospital and they would not return the child to her. Neither party's testimony establishes that this was intended to be an adoptive placement.

The confusion here stems largely from the fact that the same petition for adoption form is used for all adoptions including agency, private and step-parent adoptions. The date to be used in an agency adoption where the child is placed by a licensed agency is more easily established than in adoptions by step-parents or relatives. While step-parent adoptions often use the date of marriage as the date of placement in the home for adoption, the Ohio Supreme Court held in *In re Adoption of Kreyche* (1984), 15 Ohio St.3d 159, 15 OBR 304, 472 N.E.2d 1106, that the marriage of a natural parent and the subsequent bringing of a minor into the home with the step-parent will not initiate *ab initio* the placement of a minor for the purposes of R.C. 3107.07(A). In a private adoption, prior to placement of the child for adoption, the natural parents appear before the probate court, an investigation is made and if it is in the child's best interests the court approves the placement and places the child in the home of the prospective adoptive parents.

A placement as in the case *sub judice* is addressed in R.C. 5103.16 wherein it states: "A child may be placed temporarily without written consent or court

commitment with persons related by blood or marriage, or in a legally licensed boarding home." Since it is not established that the mother intended to place the child in petitioners' home for adoption the placement will be considered as a temporary placement pursuant to R.C. 5103.16, not an adoptive placement. The testimony establishes that Nancy knew that the child was in the care of the petitioners; therefore, appellant may not now claim that she suffered any prejudice from an incorrect placement date on the petition.

 Appellant argues that the correct placement date was necessary for the court to properly determine when a final decree of adoption may be issued. However, the court will not issue a final decree of adoption until the child to be adopted has lived in the home of the petitioners for at least six months pursuant to R.C. 3107.13. In this case where the child is living with the petitioners in a R.C. 5103.16 temporary placement, the court will properly use the date of the filing of the petitions as the starting date of the statutory six-month period. Appellant argues that the court had the incorrect placement date since it stated in its finding of fact that Nancy left the child with the petitioners; however, the court does not refer to this event as an adoptive placement. The court further correctly states that the placement occurred on January 19, 1989, the date the petition was filed. Appellant's argument is without merit.

 Appellant next addresses petitioners' failure to comply with R.C. 3107.10 which states:

"(A) The petitioner in any proceeding for adoption of a minor shall file, before the petition is heard, a full accounting in a manner acceptable to the court of all disbursements of anything of value made or agreed to be made by or on behalf of the petitioner in connection with the placement or adoption of the minor. The accounting shall show any payments made or to be made by or on behalf of the petitioner in connection with the placement or adoption."

The record reflects that an accounting was filed with the court; however, it was not filed until three days after the hearing on the petition. The language of R.C. 3107.10 is mandatory; however, appellant has made no showing of how she was prejudiced by the error. While such an error is not to be viewed as a mere technicality, there must be a showing of prejudice before such an error would warrant reversal of the trial court's decision. The clear purpose of requiring a full accounting of all payments or disbursements is to prevent a black market in the buying and selling of babies. This case involves a child placed with grandparent by a natural parent. The court's acceptance of the accounting caused no prejudice to appellant. It should be further noted that the accounting was filed prior to a final order of adoption being issued, thus the court had the opportunity to review the account for any irregularities.

■ R.C. 3107.11(A)(1) states:

"(A) After the filing of a petition to adopt an adult or a minor, the court shall fix a time and place for hearing the petition. The hearing may take place at any time more than thirty days after the date on which the minor is placed in the home of the petitioner. At least twenty days before the date of the hearing, notice of filing of the petition and the time and place of hearing shall be given by the court to all of the following:

"(1) The department of human services."

Appellant has failed to demonstrate any prejudice occurring by the court's failure to notify the department of human services. The department of human services was not involved in the placement of this child nor was any person, association, or institution certified by the department of human services involved. Appellant presents no case law supporting her position that this was reversible error. Absent a showing of prejudice, appellant's argument is not well taken.

■ R.C. 3107.12 states:

"(A) An investigation shall be made by the department of human services, an agency, or other person appointed by the court into the conditions and antecedents of a minor sought to be adopted and of the petitioner, for the purpose of ascertaining whether the adoptive home is a suitable home for the minor and whether the proposed adoption is in the best interest of the minor. If the minor is in the custody of the department or an agency, the department or agency shall perform the investigation."

Although an investigation was done, appellant argues that the court's failure to include the name of the investigator on the judgment entry captioned "Orders for Hearing and for Notice and For Appointment of Investigator" is grounds for dismissal based on lack of subject matter jurisdiction. While an investigation under R.C. 3107.12 is mandatory, in the case *sub judice*, a clerical oversight in a judgment entry does not warrant dismissal. Appellant does not suggest that an investigation wasn't conducted; rather, the error is based on a clerical oversight in the order. The investigation report was completed and filed with the court. This argument is without merit.

■ R.C. 5103.16 addresses placing of children, authority of children services board and adoption by relatives. Appellant argues that the petitioners and the court failed to comply with the provisions of R.C. 5103.16. This argument is without merit. The code section is too lengthy to produce here in total; however, it is noted above in pertinent part. R.C. 5103.16 provides for a procedure which must be followed unless the placement is made by a county

human services department that has a children services division, county children services board, the department of human services, an organization that is authorized to place children for adoption under a certificate of the department of human services, or custodians in a foreign state or country. The code specifically differentiates children temporarily placed with persons related by blood, marriage, or in a legally licensed boarding home. As discussed above, the record does not indicate that the placement was for the purpose of adoption and thus will be considered as a temporary placement. This code section is specifically limited to adoptive placement with the intent to prohibit illegal placements.

Appellant relies on *Lemley v. Kaiser* (1983), 6 Ohio St.3d 258, 6 OBR 324, 452 N.E.2d 1304, wherein the court held that the R.C. 5103.16 procedure for independent placement of a child for adoption is in derogation of the common law and must be strictly construed. While this is true, *Lemley* is distinguishable in that *Lemley* involved unwed parents who consulted an attorney for placement of their child for adoption. Documents were executed and one of the attorneys delivered the child to the prospective adoptive parents the next day. Twelve days later the parents again contacted the attorney attempting to have their child returned to them. Appellants were attorneys who had actively participated in a placement without regard for the statutory guidelines for placement.

 Appellant's eighth assignment of error asserts that the court was without jurisdiction because of petitioners' failure to file a custody affidavit in compliance with R.C. 3109.27. The section provides in pertinent part:

"(A) Every party in a custody proceeding, in his first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall also include * * *."

There is no requirement set forth in R.C. 3107.05 that a custodial affidavit be filed with a petition for adoption. R.C. 3109.21(C) defines a custody proceeding as:

" * * * proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings."

An adoption proceeding creates the relationship of parent and child while severing the parental rights and responsibilities of biological or other legal parents. *Adoption is not a proceeding to determine custody.* It is only if

an adoption petition is dismissed that the probate court may determine the agency or person to have custody of the person to be adopted. R.C. 3107.-14(D). Once the parent-child relationship is created, the adoptive parent may in actuality have physical custody of the child; however, it is not the adoption proceeding that has determined the custody of the child. The adoptive parent's custody of the child is then the same as that of a natural parent not because the probate court has determined custody but because the adoption has created the parent-child relationship. Therefore, adoption is not a custody proceeding and there is no requirement that petitioners file an affidavit pursuant to R.C. 3109.27. Appellant's eighth assignment of error is overruled.

■■■ As there is no requirement that petitioners file an affidavit pursuant to R.C. 3109.27, it was harmless error for the court to allow petitioners to file the affidavit after the hearing on the adoption petition. The affidavit was not required, therefore, there is no question as to its timeliness. Appellant's ninth assignment of error is without merit.

The facts of the case *sub judice* do not indicate that the court was without jurisdiction to enter a decree of adoption. The court did not err in denying appellant's motions to dismiss for lack of subject matter jurisdiction. Therefore, appellant's first, fifth, eighth, ninth, and tenth assignments of error are overruled.

Appellant's fourth assignment of error asserts that the court erred in admitting evidence of character and conduct, opinion and reputation evidence of character, and evidence of convictions of crimes inconsistent with Evid.R. 608 and 609. Appellant argues that such admission was prejudicial to the appellant.

■■■ Appellant has made no showing of how admission of this evidence was prejudicial. There is no reference in the court's findings of fact regarding reputation, sexual relationships, or opinions as to morality. There were findings as to prior criminal charges; however, these would be admissible if the evidence is offered as evidence of character which is in issue in the determination of the best interests of the child. Additionally, it should be noted that this is a hearing before a probate judge not a trial to a jury. Admission of evidence which may be considered prejudicial in a jury trial may be harmless error in a hearing before a judge. Therefore, appellant's fourth assignment of error is overruled.

■■■ Appellant's second assignment of error asserts that the mandatory R.C. 3107.12 investigation was prejudicial to appellant, denied the trial court of necessary information and contained an improper conclusion of law.

R.C. 3107.12 requires that an investigation be made into "the conditions and antecedents of a minor sought to be adopted and of the petitioner, for the purpose of ascertaining whether the adoptive home is a suitable home for the minor and whether the proposed adoption is in the best interest of the minor."

There is no specific requirement that the investigator contact the natural parents of the child; however, R.C. 3107.12(C)(4) states that the written report of the investigation shall contain the biological or legal parents' attitude toward the proposed adoption and the circumstances under which the minor came to be placed in the home of the petitioner. The investigation report in the case *sub judice* contains the following statement regarding the attitude of each parent toward the proposed adoption: "Father deceased. Mother's consent not needed as she has failed to support child or maintain contact." This may be a legal conclusion. However, the investigation report is simply a tool for the trial court and is not dispositive of any issues. Also, the investigator could have been subpoenaed and the testimony and report would have been subject to cross-examination. While it may be difficult in this case to see how the investigator can make a recommendation and determination of the child's best interests without contacting the natural mother, the proper challenge to the investigator's report would be by subpoena and cross-examination. Appellant's second assignment of error is overruled.

Appellant's third and seventh assignments are interrelated and will be addressed together.

Appellant's third assignment of error asserts that the trial court erred in overruling appellant's motion to appoint a guardian ad litem to protect the interests of the child sought to be adopted. Appellant's seventh assignment of error contends that the court erred in finding that granting the adoption was in the child's best interest.

 Adoption is a proceeding of extraordinary and serious consequence. The statute, however, does not specifically require the court to appoint a guardian ad litem in an adoption proceeding. There is little case law on point. It is therefore imperative that the court examine a motion for appointment of a guardian ad litem in light of the facts of each case.

 Of paramount importance in all adoption proceedings, is the best interests of the child to be adopted. The Ohio Revised Code provides for the appointment of a guardian ad litem in juvenile court permanent custody cases where the interests of the child and the interests of the parents may conflict. R.C. 2151.281 and Juv.R. 4. Many unreported cases affirm the statutory requirement of mandatory appointment of a guardian ad litem in permanent custody cases. *In re Strowbridge* (Oct. 25, 1982), Lawrence App. No. 1574,

unreported, 1982 WL 3565, found that a child's right to have a guardian ad litem appointed in neglect and permanent custody proceedings is a mandatory right conferred by statute. Without such an appointment a child's due process rights in such proceedings would be severely infringed upon requiring reversal of any court order subsequent thereto. *In re Lewis* (Sept. 2, 1982), Lawrence App. No. 1573, unreported, 1982 WL 3527, failure to appoint a guardian ad litem for a child in a permanent custody case is reversible error. *In re Wilson* (Nov. 12, 1981), Paulding App. No. 11–80–28, unreported, 1981 WL 6717, a guardian ad litem should be appointed for children in a permanent custody case since their interests conflict with their mother's. *In re Smith* (Dec. 20, 1978), Muskingum App. No. CA–78–25, unreported, a guardian ad litem should be appointed in a permanent custody case under Juv.R. 4(B)(2) because the child's and the parent's interests may conflict. *In re Christopher* (1977), 54 Ohio App.2d 137, 8 O.O.3d 271, 376 N.E.2d 603 is of interest in which the court held that it was apparent that the mother had shown little interest in the child who had been in the home of prospective adoptive parents for a year. Therefore, the child's and the parent's interest could conflict and a guardian ad litem is required under Juv.R. 4(B)(2).

Clearly, an adoption proceeding is even more serious than the granting of permanent custody to a party. The decree of adoption severs all parental rights and creates a new parent-child relationship.

The one party whose sole concern is to advocate the child's best interest is the guardian ad litem. This court raised this issue, *sua sponte*, in *In re Bing* (Dec. 13, 1984), Athens App. No. 1249, unreported, 1984 WL 5691, wherein the court held that certain situations demand the appointment of a guardian ad litem. The situation in *Bing* involved a petition for adoption of two children by their uncle. Children services, which had permanent custody of the children, refused to consent. This court stated:

"An additional factor, brought up by neither party at trial or on appeal, is the total disregard by all concerned for the representation of the children's interests before the court. The only adults upon which these children could hope to rely for protection were involved in a bitter contest over their custody. Under the circumstances, the court should have appointed a guardian ad litem to represent the interests of the children in the litigation."

Both appellant and appellees rely on *In re Carnes* (1983), 8 Ohio App.3d 435, 8 OBR 560, 457 N.E.2d 903, appellant citing the dissenting opinion and appellees citing the majority opinion. *Carnes* is distinguishable from the case *sub judice* in that *Carnes* involved a petition filed by a step-parent to adopt his stepchild. The court reasoned in *Carnes* that although the mother and stepfather were "natural guardians," they were not appointed guardians

within the meaning of R.C. 2111.23. The court found that although the natural guardians may have had interests adverse to the child's future, it does not bring the action within the meaning of R.C. 2111.23, which states:

"In a suit or proceeding in which the guardian has an adverse interest, the court shall appoint a guardian ad litem to represent such minor or other person under legal disability."

In the case *sub judice,* one of the child's natural guardians, her father, is deceased. The child's other natural guardian does not have physical custody of her and further she does not have legal custody. Indeed it may be argued that as of the time of the filing of the adoption petition, *no one had legal custody of the child.* The grandparents had physical custody of the child but had not been granted legal custody since there was no custody action initiated to determine legal custody. The petitioners chose to pursue adoption, not legal custody. If they wanted only legal custody of the child, they would have had to bring their action in domestic relations court or juvenile court. It therefore is not clear who was the child's custodian, and the child's natural guardian, her mother, was contesting her child's adoption. This fact situation is similar to a permanent custody proceeding in that the child and the parent's interests may conflict. The appointment of a guardian ad litem would protect the child's best interests.

The court in *Carnes* also found that a guardian ad litem was not required because the court appointed investigator protects the child's best interests. While R.C. 3107.12 mandates that an investigation be made for the purpose of ascertaining whether the adoptive home is suitable and whether the adoption is in the best interests of the child, it does not have any requirements as to how the investigation is to be conducted. The statute does not differentiate the type of investigation that should be conducted for different types of adoptions. Logically, if parents have surrendered a child for adoption and both parents have sought to have their child adopted, there may not be a need to contact the natural parents of the child. However, in a contested adoption proceeding, it is difficult to see how the child's best interests may properly be determined if the investigator has only inquired as to condition of the petitioners and the child.

The report on the proposed adoption filed in this case recommends that the adoption be granted. It does not, however, specifically state that the adoption is in the child's best interests. While it may be presumed that the child's best interests were taken into consideration when making a recommendation in favor of the proposed adoption, in an adoption procedure with its serious consequences, the court should strive to assure that the best interests of the child are considered rather than making an assumption. Appointment of a

guardian ad litem would further assure that the child's interests are protected.

Although children are not required to be made parties in an adoption proceeding, they are directly affected by such proceedings.

The record, in addressing the child's best interests, is silent concerning the fact that the child, now eight years of age, would be adopted by grandparents who now are sixty-six and sixty-nine years old. It appears from the record that the transgressions of the natural mother, emotionally, economically, and morally, were contributed to by an unfortunate pre-marital relationship and subsequent marriage to the now deceased father who suffered serious health problems that monetarily affected the entire marriage relationship. The record reveals that the granting of the adoption would place the child with elderly persons as contrasted to that of maintaining a mother-daughter situation in a meaningful family oriented circumstance along with a half sister of comparable age (twelve years) from a prior marriage. Thus, although the grandparents, undoubtedly, are wonderful people and have excellent financial resources, those qualities appear to have been compared with the former unfortunate lifestyle of the natural mother rather than with the potential of life with parents of normal age whose lifestyle now is conducive to a healthy family relationship. It is in this vein that the best interests of the child could at least have been brought to the attention of the court through the efforts of a guardian ad litem.

When the best interests of the child are at stake it is inconceivable that no one was appointed to represent her interests, the very interests the court is required to protect. The subject of the adoption, the child, should not be treated as a chattel. The last sentence of Civ.R. 17(B) is most pertinent and meaningful, to-wit: "When a minor or incompetent person is not otherwise represented in an action the court shall appoint a guardian ad litem or shall make such other order as it deems proper for the protection of such minor or incompetent person."

As noted in the dissent in *Carnes*, without a guardian ad litem, the child is denied a meaningful voice in the trial proceedings. Refusal to appoint a guardian ad litem also denies the child of a right to appeal because she was not a party below. In a situation where the only living parent does not have legal or physical custody of the child and the child's interests may be adverse to those of the parent, it is error not to appoint a guardian ad litem. Without the appointment of a guardian ad litem the court was premature in determining that the adoption was in the child's best interest. Appellant's third and seventh assignments of error are sustained.

Appellant's sixth assignment of error asserts that the court erred in finding that the appellant's consent to the adoption was not required by finding appellant had failed to support the child without justifiable cause, such finding being against the manifest weight of the evidence.

 The petitioners allege that appellant had failed without justifiable cause to support the child for the statutory period of at least one year immediately preceding the filing of the petition to adopt. In applying this statute, the petitioning party bears the burden of proving the allegations of the petition. The court in *In re Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, held:

"1. Pursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, that the natural parent has failed to support the child for the requisite one-year period and that this failure was without justifiable cause. (*In Re Adoption of Holcomb* [1985], 18 Ohio St.3d 361 [18 OBR 419, 481 N.E.2d 613], paragraph four of the syllabus, extended.)

"2. The question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. (*In re Adoption of McDermitt* [1980], 63 Ohio St.2d 301, 306 [17 O.O.3d 195, 198, 408 N.E.2d 680, 684], followed)."

Clear and convincing, as a standard of proof, is defined in *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118 paragraph three of the syllabus, as follows:

"Clear and convincing evidence is that measure of degree of proof which is more than a mere 'preponderance of the evidence', but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

It is undisputed that appellant failed to pay any child support during the critical one year period immediately preceding the filing of the adoption petition. However, the petitioner must also establish that such failure to support was without justifiable cause if the natural parent raises the issue.

 Petitioner, Eloise Howell presented evidence on the issue of justifiable cause as follows:

"Mr. McCown: After she separated from your son, do you know whether she had any employment or other sources of income?

"Mrs. Howell: Yes.

"Mr. McCown: What were those?

"Mrs. Howell: She worked at McDonald's in Ashland, I'd say approximately two years.

"Mr. McCown: What two years would that have been, with reference to the divorce in '85.

"Mrs. Howell: '87 or '88, I'm not sure.

"Mr. McCown: Alright. Besides the income that she had from well, here, and after '87 or '88, presently, do you know whether she has any means of support?

"Mrs. Howell: No, sir.

"Mr. McCown: No, sir, you don't know, or she doesn't have any?

"Mrs. Howell: Well I don't know."

The testimony went on to establish that Mrs. Howell was told by Nancy Howell that she had received assistance but that it was while she was married to James, not during the statutory time period.

Testimony elicited from Mike Ratcliff, Nancy's present husband, established that he works at Raceland Car Shop, that Nancy is unemployed, and that she has no income other than child support she receives for another child. Testimony regarding Nancy's ability or willingness to support was as follows:

"Mr. McCown: Is she able to work?

"Mr. Ratcliff: Yes, sir.

"Mr. McCown: She just doesn't work?

"Mr. Ratcliff: No, sir. I don't want my wife to work.

"Mr. McCown: Has she been able to work the last three years?

"Mr. Ratcliff: That's something I can't say, 'cause I don't know it. * * * That's her decision, rather, if she felt she was able to work or not."

Ratcliff went on to testify that he knew of no reason why she could not work. When questioned in regards to her employment at McDonald's, he testified that it was a couple of years ago and that she had stopped working because at minimum wage with the cost for gas and other expenses it did not pay her to work. Nancy Howell testified that she had no income other than child support for her other child during the year preceding the filing of the petition.

That which is noted above is the only testimony regarding Nancy's failure to support without justifiable cause. The court in its finding of fact found that, "Nancy worked at McDonald's for two years during this period." The period referred to is given earlier in the findings of fact as, "The petition was

filed on 1/19/89." There was no testimony clearly establishing that she worked during the year prior to the filing of the petition for adoption. Mrs. Eloise Howell said she was unsure when Nancy worked at McDonald's, if it was 1987 or 1988.

Appellant met her burden by raising the issue that she had justifiably failed to pay child support because she had no income and that she was not employed. Therefore, petitioners had the burden of proving that appellant's failure was without justifiable cause. The only testimony on the issue is by Mike Ratcliff saying he knew of no physical reason why his wife couldn't work and that he doesn't want her to work. However, he also raised the issue that working at minimum wage was not economically practical.

Petitioners rely on *In re Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, saying the court held that where there is a failure to support, the burden of going forward with evidence of justifiable cause shifts to the parent. This misstates the holding. In *Bovett*, the court held that once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner. In the case *sub judice*, appellant presented evidence that her failure to support was because she was unemployed. The burden remained with the petitioners to show she was unwilling rather than unable to support. Petitioners have not proven by a preponderance of the evidence, much less the required clear and convincing evidence, that appellant's failure to support was without justifiable cause. Due to the lack of evidence on the issues, in reality, the question has been left unanswered.

Petitioners have not presented sufficient evidence for the court to find by clear and convincing evidence that appellant's failure to support during the one year period was without justifiable cause. Appellant's sixth assignment of error is sustained.

Appellant's eleventh assignment of error asserts that the court erred in overruling appellant's motion to vacate the interlocutory order of adoption.

On August 3, 1989, appellant filed a motion to vacate the interlocutory order of adoption granted on April 24, 1989 based on the grounds that the interlocutory order of adoption did not reflect the court's findings in its decision, that counsel for appellant did not have the opportunity to examine or sign the order and that counsel was not notified that the order had been filed. The court denied appellant's motion to vacate but entered a new interlocutory

order of adoption, signed by both counsel for both parties and filed on October 13, 1989.

The language of the order overruling the motion to vacate was essentially mooted by the filing, as noted above, of a modified interlocutory order of adoption on the same date. In other words, the discrepancies complained of in the motion to vacate were brought to the trial court's attention not only by motion but at a hearing thereon, as noted by appellant's counsel in his response, filed May 21, 1990 in this court, to the appellee's second motion to dismiss appeal. Appellant's counsel, in that response, emphasized that the notice of appeal was from the "modified" interlocutory order of October 13, 1989, which comports with the notice of appeal filed November 9, 1989 listing the appeal only "from the Interlocutory Order of Adoption entered in this action on October 13, 1989." It follows that where no appeal was taken from the overruling of the motion to vacate, this assignment is not properly before this court and is therefore, overruled. However, assuming *arguendo* that it is properly before this court, the issues thereof are mooted by the "Modified" order which was appealed and the assignment is overruled.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GREY, J., concurs.

HARSHA, J., concurs in part and dissents in part.

EDWIN T. HOFSTETTER, retired, of the Eleventh Appellate District, sitting by assignment.

HARSHA, Judge, concurring in part and dissenting in part.

I dissent with respect to the majority's holdings on the third, sixth, and seventh assignments of error. While I agree it was preferable for the trial court to appoint a guardian ad litem in this context, error, if any, in this regard was harmless in my view. I also disagree that appellees failed to carry their burden of proof to establish that appellant's lack of employment was without justifiable cause. Appellant's husband indicated that she didn't work solely because he didn't want her to. This is sufficient in my mind to satisfy that any burden appellees may have had to establish that appellee's failure to support her daughter was without justifiable cause.

Lastly, pursuant to R.C. 3107.14, adoption matters must be decided on a case-by-case basis through the able exercise of discretion by the trial court giving due consideration to all known factors in determining what is in the

best interest of the person to be adopted. *In re Adoption of Charles B.* (1990), 50 Ohio St.3d 88, 552 N.E.2d 884, paragraph three of the syllabus. As recognized in the trial court's August 24, 1989 opinion, the record is replete with appellant's general lack of concern for the child, her past criminal convictions, and the environment that appellees would provide for the child. There is ample evidence supportive of the trial court's best-interest determination. Consequently, appellant's seventh assignment of error should be overruled on the authority of *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.