## In re PROPOSED ADOPTION OF a CHILD by MICHAEL S. et al.

[Cite as *In re Proposed Adoption* (1998), 131 Ohio App.3d 358.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–98–009.

Decided Nov. 6, 1998.

---

5. (1976), 46 Ohio St.2d 72, 75 O.O.2d 150, 346 N.E.2d 151.

6. (1985), 26 Ohio App.3d 99, 26 OBR 274, 498 N.E.2d 204.

*Paul F. Meyerhoefer*, for appellants.

HANDWORK, Presiding Judge.

This case is on appeal from the February 3, 1998 judgment of the Huron County Court of Common Pleas, Probate Division, which found that appellants, Michael and Shirley S., had participated in an illegal placement of a child for adoption and that they were not suitable prospective adoptive parents of the child because of their conduct. On appeal, appellants assert the following assignment of error:

"The trial court erred in finding the child * * * * was illegally placed with [the prospective adoptive parents] and in finding the [prospective adoptive parents] were not suitable adoptive parents by reason thereof."

The child involved was born on February 11, 1997. In March 1997, the mother contacted appellants to discuss the possibility of appellants adopting the child. Before the child went to live with appellants, the mother called Erie County Children Services. Appellants and two representatives from Erie County Children Services came to visit the mother. At the meeting, the mother signed a consent for medical treatment so that appellants could seek medical care for the infant. The evidence is unclear as to whether the agency provided the medical treatment form or suggested it. After the meeting, the mother gave the child to appellants and the child has remained in their home ever since.

On December 24, 1997, appellants filed an application for preplacement of the child for adoption pursuant to R.C. 5103.16. A representative of the Huron County Children Services investigated this case to determine if an illegal adoption had taken place. She testified that the Erie County Children Services did initially participate in the process, but stepped out when it learned that the mother was only temporarily living in Erie County.

The court held that the child was illegally placed with appellants for purposes of adoption. The court further found that appellants are not suitable prospective adoptive parents of this child because they participated in the illegal placement. The court also ordered that the judgment was a final order pursuant to Civ.R. 54(B).

■ On appeal, appellants argue that there was no illegal placement in this case. Assuming that the court's holding was based on a violation of R.C. 5103.16(A), they argue that the function of this statute is to prevent black-market adoptions, which is not what happened in this case.

■ While the adoption laws have existed for many years, the entire statutory scheme was repealed, effective January 1, 1977, and replaced with a new scheme, similar to the Uniform Adoption Act. 136 Ohio Laws, Part I, 1839. Since the adoption statutes were enacted to obliterate the common law, they must be

strictly construed, and strict compliance with the statutes is necessary in order for an adoption to be binding. *Lemley v. Kaiser* (1983), 6 Ohio St.3d 258, 6 OBR 324, 452 N.E.2d 1304, paragraph one of the syllabus.

While R.C. 5103.16 does not appear with the general provisions of the adoption scheme enacted in R.C. Chapter 3107, it is part of the statutory adoption scheme. *Id.* at 260, 6 OBR at 326–327, 452 N.E.2d at 1306–1307. R.C. Chapter 5103 governs the authority of the Division of Social Administration to arrange for adoption of children.

R.C. 5103.16 provides as follows:

"(A) Except as otherwise provided in this section, no child shall be placed or accepted for placement under any written or oral agreement or understanding that transfers or surrenders the legal rights, powers, or duties of the legal parent, parents, or guardian of the child into the temporary or permanent custody of any association or institution that is not certified by the department of human services under section 5103.03 of the Revised Code, without the written consent of the office in the department that oversees the interstate compact on placement of children established under section 5103.20 of the Revised Code, or by a commitment of a juvenile court, or by a commitment of a probate court as provided in this section. A child may be placed temporarily without written consent or court commitment with persons related by blood or marriage or in a legally licensed boarding home.

" * * *

"(D) No child shall be placed or received for adoption or with intent to adopt unless placement is made by a public children services agency, an institution or association that is certified by the department of human services under section 5103.03 of the Revised Code to place children for adoption, or custodians in another state or foreign country, or unless all of the following criteria are met:

"(1) Prior to the placement and receiving of the child, the parent or parents of the child personally have applied to, and appeared before, the probate court of the county in which the parent or parents reside, or in which the person seeking to adopt the child resides, for approval of the proposed placement specified in the application and have signed and filed with the court a written statement showing that the parent or parents are aware of their right to contest the decree of adoption subject to the limitations of section 3107.16 of the Revised Code;

"(2) The court ordered an independent home study of the proposed placement * * * and * * * determined that the proposed placement is in the best interest of the child;

"(3) The court has approved of record the proposed placement."

■ The purpose behind R.C. 5103.16 is to prevent placement of the child to be adopted as part of a black-market transaction based on a profit motive rather than a child's best interest. *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 656, 665 N.E.2d 1070, 1076; *Lemley v. Kaiser.* Anyone who participates in an adoption in violation of R.C. 5301.16 may be punished under R.C. 5103.99(B). The child may be adjudicated a neglected child under R.C. 2151.03(A)(5). Furthermore, any pending petition for adoption must be dismissed by the probate court if the child was placed in the home of the petitioner in violation of law. R.C. 3107.14(D).

■ Under current Ohio law, a parent may proceed to privately arrange for the adoption of her child instead of proceeding through a statutorily approved public or private adoption agency. R.C. 5103.16(D). However, before the parent places her child in the home of a prospective adoptive parent, she must obtain the prior consent of the probate court. *Id.* Failure to comply with the statutory requirement of court approval of the placement results in an illegal placement, and any pending petition for adoption filed by the prospective adoptive parents must be dismissed. R.C. 3107.14(D); *Lemley v. Kaiser; In re Adoption of White* (Feb. 16, 1982), Pickaway App. No. 80–CA–25, unreported, 1982 WL 3375. The key is not whether the child is in the home of the prospective adoptive parent, but rather why the child is in the home. If the child is already in the prospective adoptive home for reasons other than the expected adoption, R.C. 5301.16 has not been violated. *In re Wilson* (Feb. 13, 1995), Jefferson App. No. 93–J–12, unreported, 1995 WL 70128 (grandparents' legal custody of the child under a domestic relations court order); *In re Adoption of Howell* (1991), 77 Ohio App.3d 80, 601 N.E.2d 92 (child was in the home of the paternal grandparents pursuant to mother's consent and, thereafter, as a result of the death of the father, for purposes of providing care for the child and not for purposes of adoption).

In this case, the mother clearly moved her child into appellants' home solely because they had agreed to adopt the child and would also care for the child until the adoption process was completed. While the mother had contacted Erie County Children Services, she was told to pursue a private adoption through private attorneys. However, there is no evidence that the representatives from children services informed the mother or appellants that private adoptions must be conducted through the probate court or that the child could not be moved until the court had been consulted. The mother apparently did not contact an attorney and gave the child to appellants to care for the child until they could adopt her. There is nothing in the record to indicate that this situation involved a black-market baby transaction. Rather, it is clear that appellants failed to consult with an attorney before they took the child. Therefore, the lower court's

holding that appellants can never be considered as suitable adoptive parents for this child constitutes an abuse of discretion.

However, the court's dismissal of appellants' petition for preplacement was proper. R.C. 5103.16(D) provides that only a parent may petition the court to approve a private adoption placement prior to placement. There is no provision for the adoptive parents seeking preplacement approval. The prospective adoptive parents may petition the court for adoption under R.C. Chapter 3107. Furthermore, the legislature has repealed former R.C. 3107.08 (see 136 Ohio Laws, Part I, 326, 391), which permitted the probate court to certify the case to the juvenile court or conduct its own hearing to determine if placement without court approval was proper. If approved, the probate court could then proceed with the adoption.

While the current law appears onerous, we must strictly adhere to the statutory process for adoption in order to ensure that the adoption is final. Accordingly, appellants' sole assignment of error is well taken in part and not well taken in part.

The lower court having committed error prejudicial to appellants, the judgment of the Huron County Court of Common Pleas, Probate Division, is reversed in part and affirmed in part. The judgment is reversed only insofar as it held that appellants may never be considered as adoptive parents of the child at issue. In all other respects, the judgment is affirmed. Pursuant to App.R. 24, one half of the costs of the appeal are assessed to appellants. Since there is no appellee in this case, the remaining costs are ordered to be waived.

*Judgment reversed in part*
*and affirmed in part.*

MELVIN L. RESNICK and SHERCK, JJ., concur.