{¶ 59} I respectfully dissent. I agree that a trial court is notrequired to appoint a guardian ad litem in every adoption proceeding. This may be especially true in an uncontested adoption proceeding. However, in a case like this, where the interests of the child and the interests of her parents may conflict, I believe an appointment of a guardian ad litem to represent the interests of the child is necessary.
 {¶ 60} R.C. 3107.161(B) provides several factors a court is required to consider when making a determination in a contested adoption proceeding. Two of the factors are:
 {¶ 61} "(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
 {¶ 62} "* * *
 {¶ 63} "(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest[.]"
 {¶ 64} For the following reasons, the trial court erred by failing to appoint a guardian ad litem to assist in determining these factors. "The role of the guardian ad litem is to investigate the ward's situation and then ask the court to do that which the guardian ad litem believes is in the ward's best interests."[1]
 {¶ 65} The majority cites Howell, noting that a guardian ad litem for children in permanent custody cases is required where there may be a conflict of interest.[2] Thereafter, the Fourth District noted in that case that "an adoption proceeding is even more serious than the granting of permanent custody to a party. The decree of adoption severs all parental rights and creates a new parent-child relationship."[3]
 {¶ 66} The majority observes that the Carnes Court held that Civ.R. 17(B) does not apply to adoption cases because the child is not a party.[4] I disagree. "The subject of the adoption, the child, should not be treated as a chattel."[5] In addition, "[w]ithout a guardian ad litem, the child is denied a meaningful voice in the trial proceedings."[6] There may be no more important day in a child's life than the day her adoption proceeding is decided. As stated by Judge Hofstetter in his dissenting opinion in Carnes, "[t]he rights of the child, i.e., `best interest of the child,' should be paramount."[7] The child has a right to have her interests conveyed to the court.
 {¶ 67} The majority also notes the Carnes
Court held that R.C. 3107.12(A) adequately protected the interests of the child.[8] R.C. 31207.12(A) outlines an assessment procedure for interviewing the child and the petitioner to determine if the adoption is in the child's best interest. However, as noted by the Howell Court, "in a contested adoption proceeding, it is difficult to see how the child's best interest may properly be determined if the investigator has only inquired as to the condition of the petitioners and the child."[9] I agree.
 {¶ 68} The facts of this case clearly demonstrate this point. The assessments in the assessor's report of Lisa and Jewels were favorable. However, there was no assessment of Jennifer. The report contains only minimal references to Jennifer. It indicates Jennifer left Jewels with Shawn Haylett and Jennifer was recently granted supervised visitation of Jewels. The only additional reference to Jennifer in the report was a brief factual background, which reads, in totality:
 {¶ 69} "Name: Jennifer Lee Stuntz
 {¶ 70} "Address: [street address omitted for privacy reasons] Akron, Ohio 44320
 {¶ 71} "Place of birth: Ohio
 {¶ 72} "Marriages: never been married
 {¶ 73} "Occupation: nurses aide/telemarketing
 {¶ 74} "Nationality and race: German/Caucasian
 {¶ 75} "Attitude towards adoption: objecting"
 {¶ 76} These minimal references clearly indicate that Jennifer was not interviewed by the assessor. In this adoption action, Jennifer's parental rights were at risk of being terminated.[10] The court cannot determine that such a termination is in the best interest of the child without the benefit of an assessment of the parent whose rights are to be terminated. Jewels' relationship and interaction with Jennifer was a statutory factor the court was required to consider.[11] However, Jennifer was not even minimally examined by the court-appointed assessor.
 {¶ 77} A review of the assessor's report raises additional concerns regarding its use as a substitute for an appointment of a guardian ad litem. First, in the section regarding Lisa, the report states "[Lisa] describes herself as caring and fun loving. Jewels added nice." In the section regarding Jewels, the report states "Mr. and Mrs. Haylett indicate Jewels is happier and more outgoing." These statements, along with the remainder of the report, suggest that Lisa, Jewels, and Shawn Haylett were interviewed contemporaneously. If true, the report's assertion that "Jewels is happy to be adopted," should be considered cautiously. That is, it is doubtful that a child would tell a stranger that she does not want to be adopted by her stepmother in the presence of her father and stepmother, who both favor the adoption. Second, referenced in the report and attached to it are four "letters of recommendation" in favor of Lisa. Such letters are helpful to the court in determining whether Lisa, as the petitioner, would be a suitable adoptive parent. However, it does not appear that Jennifer was given a similar opportunity to have letters submitted on her behalf. Accordingly, the assessor's recommendation that the adoption be granted was based solely on information provided by, or in support of, Lisa. As such, the recommendation is inherently biased.
 {¶ 78} I am not placing blame on the assessor. The assessor's duty is to "conduct a prefinalization assessment of a minor and petitioner."[12]
Her duty was limited to assessing Lisa and Jewels. In contrast, a guardian ad litem is required to investigate the entire situation of the child and advise the court to do what the guardian ad litem believes is in the child's best interest.[13] As such, in this matter, a guardian ad litem would have been required to interview Jennifer and incorporate findings relating to Jennifer into the recommendation.
 {¶ 79} The facts of this matter present an extremely difficult balancing act. On one side, there is the child's stepmother, who has accepted her new role in the child's life and desires to expand their relationship. On the other side, the child's mother diligently sought help to control her drug addiction and turn her life around. However, as much as both of these individuals love Jewels, that love inherently prevents them from adequately representing Jewels' interests in this matter. They are both participants in a contested adoption proceeding, and their positions are inherently biased. In addition, Shawn's position was also biased, as he was married to Lisa and consented to the adoption. "The one party whose sole concern is to advocate the child's best interest is the guardian ad litem."[14] However, the trial court did not appoint a guardian ad litem. Therefore, in this matter, no one truly represented Jewels. Jewels deserved the right to have her interests conveyed to the court through a guardian ad litem.
 {¶ 80} Perhaps the problem of a lack of a guardian ad litem is most apparent when the July 2004 judgment entry is reviewed. While the assessor's report was part of the record, it was not introduced at the best interest hearing; the assessor did not testify at the hearing; and in its judgment entry, the trial court does not indicate it reviewed the assessor's report to determine Jewels' wishes. Rather, the trial court noted "[t]he wishes of the child to be adopted were expressed by the biological father, Shawn Haylett, and the petitioner, Lisa Marie Haylett. No direct testimony from the child was offered." Again, Lisa and Shawn were inherently biased, in that they sought and consented to the adoption. Yet the court relied on their statements as to what the "wishes" of Jewels were.
 {¶ 81} The facts and pleadings of this case indicated there was a conflict between Jennifer and Lisa from the very beginning of this matter. Lisa testified that the adoption petition was filed in response to Jennifer filing her motion for visitation, "because we didn't want Jennifer to see Jewels."
 {¶ 82} The trial court erred by failing to appoint a guardian ad litem for Jewels.
 {¶ 83} This matter should be remanded for the trial court to appoint a guardian ad litem for Jewels and, then, to conduct a new best interest hearing, so the appointed guardian ad litem may participate.
[1] (Citations omitted.) In re Stacey S. (1999), 136 Ohio App.3d 503,514.
[2] See In re Adoption of Howell (1991), 77 Ohio App.3d 80, 91-92.
[3] Id. at 92.
[4] See In re Adoption of Carnes (1983), 8 Ohio App.3d 435, 437.
[5] In re Adoption of Howell, 77 Ohio App.3d at 94.
[6] Id.
[7] In re Adoption of Carnes (1983), 8 Ohio App.3d at 438
(Hofstetter, P.J., dissenting).
[8] In re Adoption of Carnes, 8 Ohio App.3d at 437.
[9] In re Adoption of Howell, 77 Ohio App.3d at 94.
[10] Id. at 92.
[11] R.C. 3107.161(B)(8).
[12] R.C. 3107.12(A).
[13] In re Stacey S., 136 Ohio App.3d at 514.
[14] In re Adoption of Howell, 77 Ohio App.3d at 92.