**In re SPRADLIN.**

[Cite as *In re Spradlin* (2000), 140 Ohio App.3d 402.]

Court of Appeals of Ohio,
Fourth District, Highland County.

Nos. 99CA15 and 99CA19.

Decided Dec. 1, 2000.

*Kathryn Hapner,* for appellee.

*Jill E. Beeler,* Assistant Public Defender, for appellant.

---

KLINE, Presiding Judge.

James Spradlin appeals the decisions by the Highland County Common Pleas Court, Juvenile Division, adjudicating him a delinquent child. Spradlin argues that the trial court should have appointed him a guardian *ad litem* because his and his legal guardian's interests conflicted. We agree because a trial court must appoint a guardian *ad litem* when the child's and the legal guardian's interests could conflict. Spradlin also argues that his waiver of counsel was not properly made, that the trial court violated his right against self-incrimination, and that the trial court did not engage in a meaningful dialogue prior to accepting his admissions. We do not reach the merits of these arguments because we find them moot. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings.

I

On July 8, 1999, Deputy Pat Hendrix filed a complaint alleging that Spradlin was a delinquent child because he committed burglary in violation of R.C. 2911.12(A)(3) and theft in violation of R.C. 2913.02(A).

On July 23, 1999, Greenfield Police Officer John R. Mertz filed a complaint alleging that Spradlin was a delinquent child because he committed theft in violation of R.C. 2913.02(A)(1).

On August 26, 1999, the trial court held a hearing on both allegations. Spradlin appeared with his grandfather, who, along with his wife, has custody of Spradlin. Neither of Spradlin's parents attended the hearing. Spradlin admitted to the offenses. The court proceeded to disposition with the consent of Spradlin and his grandfather. When the court gave the grandfather an opportunity to speak during the disposition phase, the following exchange took place:

"Grandfather: Well, uh, did they turn my, uh, I filed unruly on Jimmy. Did they turn that in?

"Court: I don't know. Would the Clerk check on that please? How long ago was that?

"Grandfather: Uh, the first of this coming month.

"* * *

"Court: What was the nature of the problem? Why did you turn him in for being unruly?

"Grandfather: Well, he wouldn't listen to us, and he done a lot of things to us.

"Court: Like what?

"Grandfather: Like took our food out and gave it to the Groves' [*sic*]. And he said that was his.

"Court: Okay. Anything else?

"Grandfather: Oh, there was some other things, but I think the boy's in enough trouble without me causing more.

"Court: Well, in order for me to make a decision that hopefully is what is best for Jim, I'll need to know all the facts; and if you're willing to give those to me, I'd like to hear 'em at this time.

"Grandfather: I think he could tell you more what he done to me if he wanted to.

"Court: Jim, would you like to tell me what your Grandfather's talking about?

"Spradlin: Yeah.

"Court: Well, go ahead and speak up.

"Spradlin: I'd stay out like until 2:00 or 3:00 in the morning, and I wouldn't listen to 'em and I wouldn't go to school. * * *"

After considering Spradlin's "extensive past record" and the "problems [Spradlin had been] giving [his] Grandfather at this time," the trial court committed Spradlin to the Ohio Department of Youth Services for a minimum period of six months to a maximum period of until Spradlin turns twenty-one.

Spradlin appeals[1] and asserts the following errors:

"I. The trial court violated James Spradlin's right to counsel and due process under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article One, Section Sixteen of the Ohio Constitution, and Ohio Revised Code Section 2151.352 and Juvenile Rules 4 and 29.

"II. The trial court committed reversible error when it failed to appoint a guardian *ad litem* in violation of Ohio Revised Code Section 2151.281(A) and Juvenile Rule 4(B).

"III. The trial court violated James Spradlin's Fifth and Fourteenth [Amendment] rights against self–incrimination [*sic*] to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

"IV. The trial court committed reversible error by accepting an admission before determining that the admission was knowing, voluntary, and intelligent, in violation of the Due Process Clause of the Fifth And Fourteenth Amendments to

---

1. Spradlin appealed both cases and we consolidated them for purposes of appeal.

the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution and Juvenile Rule 29."

## II

We address Spradlin's second assignment of error first because we find it dispositive of this appeal. In his second assignment of error, Spradlin argues that the trial court should have appointed a guardian *ad litem* to represent him because a conflict of interest existed between Spradlin and his grandfather.

Both R.C. 2151.281(A) and Juv.R. 4(B) mandate that a juvenile court appoint a guardian *ad litem* in certain circumstances. R.C. 2151.281(A) provides:

"The court shall appoint a guardian [*ad litem*] to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:

"(1) The child has no parent, guardian, or legal custodian.

"(2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian."

Juv.R. 4(B) provides:

"The court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

"(1) The child has no parents, guardian, or legal custodian; [or]

"(2) The interests of the child and the interests of the parent may conflict."

■ Because these provisions are mandatory, the failure of a court to appoint a guardian *ad litem* when these provisions require such an appointment constitutes reversible error. *In re Howell* (1991), 77 Ohio App.3d 80, 92, 601 N.E.2d 92, 99–100. In *Howell,* we reversed an interlocutory order of adoption in part because the trial court failed to appoint a guardian *ad litem* to represent the child. In doing so, we reasoned that permanent custody proceedings require the appointment of a guardian *ad litem* because of the potential conflict of interest between the child and other parties to the proceedings. We also outlined the various standards that other courts have used to determine whether a court is required to appoint a guardian *ad litem. Howell* at 91–92, 601 N.E.2d at 99. For example, some appellate courts require juvenile courts to appoint a guardian *ad litem* if the juvenile's and the legal guardian's interest "could" or "may" conflict or if there is a "strong possibility" of a conflict. See *In re Sappington* (1997), 123 Ohio App.3d 448, 452–454, 704 N.E.2d 339, 341–343 (juvenile court abuses its discretion when record reveals a strong enough possibility of conflict); *In re Howard* (1997), 119 Ohio App.3d 201, 207, 695 N.E.2d 1, 4–5 (when parent speaks against child's penal interests, a "colorable claim" of a conflict of their interests is raised, requiring

thorough inquiry by the juvenile court); *In re Christopher* (1977), 54 Ohio App.2d 137, 143, 8 O.O.3d 271, 274–275, 376 N.E.2d 603, 607 (failure to appoint a guardian *ad litem* requires reversal when interests "may conflict"). Other courts require a stronger showing of conflict before reversing the juvenile court's judgment. See *In re Nation* (1989), 61 Ohio App.3d 763, 573 N.E.2d 1155; *In re Wilkins* (June 26, 1996), Hancock App. No. 5–96–1, unreported, 1996 WL 355046 (appellate court would not reverse because there was not clear enough evidence to find that trial court abused its discretion).

■■ We agree with the analysis of the Second District Court of Appeals that these "different lines of authority can be reconciled." *Sappington* at 453, 704 N.E.2d at 342. While the plain language of the rule mandates that the possibility that interests "may conflict" suffice, "the juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and child." *Sappington* at 453–454, 704 N.E.2d at 342, citing *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774. Therefore, an abuse-of-discretion standard applies to the trial court's decision whether to appoint a guardian *ad litem*. *Sappington* at 454, 704 N.E.2d at 342–343. Thus, the relevant question here is whether the record from below "reveals a strong enough possibility of conflict of interest between [the legal guardian] and child to show that the juvenile court abused its discretion [by not appointing a guardian *ad litem*]." *Sappington* at 454, 704 N.E.2d at 342.

■ A juvenile court should be more sensitive to potential conflicts of interest under Juv.R. 4(B)(2) when there is no other person present to protect the interests and rights of the juvenile. *Sappington* at 455, 704 N.E.2d at 343–344.

■ In this case, the grandfather informed the juvenile court that he had recently filed an unruly charge against Spradlin. The record indicates that the grandfather did so out of curiosity about the status of the case. There is nothing in the record that supports that the grandfather did so out of a concern for Spradlin's best interests. In fact, the grandfather eventually refused to continue explaining the basis of the complaint saying, "I think the boy's in enough trouble without me causing any more." This comment along with the mere fact that the grandfather had filed the complaint should have suggested a strong possibility of a conflict of interests to the juvenile court. Thus, we find that the trial court abused its discretion by failing to appoint a guardian *ad litem* for Spradlin or inquiring further into whether a guardian *ad litem* was necessary. Accordingly, we sustain Spradlin's second assignment of error.

### III

We do not address the remainder of Spradlin's assignments of error because we find them moot. See App.R. 12(A)(1)(c).

## IV

In sum, we sustain Spradlin's second assignment of error and find that the remaining assignments of error are moot. Accordingly, we reverse the judgments of the trial court and remand these cases to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GREY, J., concurs.

HARSHA, J., dissents.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.

HARSHA, Judge, dissenting.

I respectfully dissent. I do not believe that the record shows a sufficiently "strong possibility of conflicting interests" between the appellant and his grandfather to justify reversal. While the record shows that the appellant's grandfather had an unruly charge pending against the appellant at the time of the trial, there is no indication that he acted adversely to the appellant's interests or failed to protect his interests during the course of the proceeding. The fact that the appellant's grandfather refused to further explain the circumstances of the unruly charge does not indicate a conflict in my view. If anything, I see it as an attempt on the grandfather's part to protect the appellant. Thus, after review of the record, I cannot say that the court abused its discretion in failing to appoint a guardian *ad litem* in this case. See, generally, *In re Howard* (1997), 119 Ohio App.3d 201, 695 N.E.2d 1, and *In re Wilkins* (June 26, 1996), Hancock App. No. 5-96-1, unreported, 1996 WL 355046.