[Cite as *In re D.G.*, 2014-Ohio-650.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

IN THE MATTER OF: :
:
D. G. : Case Nos. 13CA3382
: 13CA3383
Adjudicated Delinquent Child :
: <u>DECISION AND JUDGMENT</u>
: <u>ENTRY</u>
:
: **Released: 02/19/14**

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Charlyn Bohland, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Robert C. Hess, Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

McFarland, J.

{¶ 1} Appellant, D.G., appeals the trial court's decisions that committed him to the Department of Youth Services (DYS) for a minimum period of six months and a maximum period not to exceed his 21st birthday. D.G. first argues that the magistrate erred by finding him competent to stand trial. D.G. failed to object to the magistrate's competency determination. Thus, he waived all but plain error. Because the record contains some reliable and credible evidence to support the magistrate's competency determination, the court did not plainly err by finding D.G. competent.

{¶ 2} D.G. next asserts that the court plainly erred by failing to appoint a guardian *ad litem* to represent his interests during the proceedings. He contends that Juv.R. 4(B) and R.C. 2151.281(A) required the court to appoint a guardian *ad litem* because his interests conflicted with those of his parents. We disagree. The record does not contain any suggestion that D.G's parents held interests inconsistent with D.G.'s interests. Because the record fails to show a potential for conflict between D.G. and his parents, the trial court did not plainly err by failing to appoint a guardian *ad litem.*

{¶ 3} D.G. additionally contends that his trial counsel was ineffective by stipulating to the competency evaluation and by failing to object to the magistrate's competency determination. D.G. cannot establish that the result of the proceedings would be different if counsel had not stipulated to the evaluation or if counsel had objected. D.G. merely speculates that if trial counsel had not stipulated to the evaluation or had objected, the court would have found D.G. incompetent to stand trial. Speculation is not sufficient to establish an ineffective assistance of counsel claim. Thus, D.G.'s ineffective assistance of counsel argument is without merit.

{¶ 4} Accordingly, we overrule D.G.'s three assignments of error and affirm the trial court's judgment.

## I.  FACTS

**{¶ 5}**  This case involves a consolidated appeal from two juvenile court judgments that committed D.G. to the Department of Youth Services for a minimum period of six months and a maximum period not to exceed his 21st birthday.

### A. Case Number 2011DEL208

**{¶ 6}**  On June 17, 2011, a complaint was filed that alleged D.G. was a delinquent child for committing domestic violence (case number 2011DEL0208). On June 20, 2011, the court appointed attorney Walter Bevins to act as D.G.'s counsel and guardian *ad litem.*

**{¶ 7}**  On August 16, 2011, the magistrate held a hearing regarding D.G.'s competency.  The state and D.G. stipulated to the accuracy of the competency evaluation.  The magistrate stated:  "Based on the evaluation that has been stipulated into evidence[, t]he Court finds the child to be competent."  After the magistrate found D.G. competent, she asked D.G. if he thought that he could "get along at home."  D.G. responded affirmatively.  The magistrate continued to question him:

> "Q.  Follow the rules at home?
> A.  Yeah.
> Q.  Stay out of trouble?
> A.  Yeah.
> Q.  Take your medication?
> A.  Yeah.

Q.  Do you know what happens if you don't?
A.  Yeah.
Q.  What?
A.  I go back to JDC."

After engaging in this conversation with D.G., the magistrate again stated that she

found D.G. competent to stand trial.

{¶ 8}  On September 26, 2011, the magistrate held a hearing.  The parties

agreed that D.G. would admit to domestic violence.  The magistrate questioned

D.G. regarding his admission to the charge of domestic violence:

"[Q.]  Mr. Gearhart you understand the charges of domestic violence?
[A.]  Yes.
[Q.]  States that * * * you did * * * knowingly cause attempt * * * attempt to cause physical harm to family or house hold [sic] member to wit. You bit your mother on the (undistinguishable) and that you have previously been * * * convicted of domestic violence in this Court.  Do you understand that?
[A.]  Not really.
[Q.]  What don't you understand?  * * *
* * * *
[Q.]  Look at me * * * you understand your charged with domestic violence which is * * * causing or attempting to cause physical harm to family or household member.  In this case, it's your mother.  They state that you bit your mother on the hand.  Do you understand that charge?
[A.]  Alright.
[Q.]  I'm sorry, I need a yes or no * * * did you bite your mother on the hand?
[A.]  I guess.
[Q.]  And you [have] been here before, for causing harm to a family or household member.
[A.]  Yes.
[Q.]  Ok.  You understand that if you admit this charge that means there will not be a trial today.  Do you understand that?
[A.]  Yes."

{¶ 9}  The magistrate then asked D.G. whether he understood that she could place him in a juvenile facility or commit him to DYS.  D.G. stated that he did not understand, so the magistrate questioned him:

"[Q.]  What don't you understand?  You understand that I can take you away from your home and place you elsewhere?
[A.]  No.
[Q.]  Ok, well I'm telling you that now.  Do you understand that, I can do that?
[A.]  No.
[Q.]  Tell me what you don't understand.
[A.]  I don't know.
[Q.]  Well look at me.  You understand I can take you away from your parents, do you understand that?
[A.]  No.
[Q.]  You understand what it means?
[A.]  No.
Q.  How old are you * * *?
A.  14.
Q.  14, do you go to school at Roweton.
A.  Yeah.
Q.  * * * Can you read?
A.  No.
Q.  Can you write?
A.  No.
* * * *
Q.  Can you write your name?
A.  Barely.
Q.  Whether you do or you don't, don't play games with this.
A.  I can write sometimes."

{¶ 10}  The magistrate permitted D.G.'s attorney to question him about the domestic violence charge.  The following exchange occurred:

"Q.  State your name for the record.
* * * *
A.  Zeek cotade.

> * * * *
> Q. What [did] you say?
> A. Zeek cotade.
> Q. [D.G.] do you recall biting your mother?
> A. No.
> Q. You recall * * * [at]temping to set the house on fire?
> A. No.
> Q. Do you know what kind of medication you're on today?
> A. No."

{¶ 11} On September 27, 2011, the magistrate adjudicated D.G. a delinquent child for committing domestic violence. On October 21, 2011, the magistrate ordered that D.G. be committed to DYS for a minimum period of six months and a maximum period not to exceed his 21st birthday. The magistrate suspended the commitment and placed D.G. on probation. On that same date, the court adopted the magistrate's decision

## B. Case Number 2012DEL0153

{¶ 12} On April 25, 2012, a complaint containing two counts of domestic violence was filed (case number 2012DEL0153). On April 26, 2012, the court appointed attorney Bevins to act as counsel for D.G. The court did not appoint Bevins as guardian *ad litem,* and it did not appoint anyone else as D.G.'s guardian *ad litem.*

{¶ 13} On June 1, 2012, the magistrate adjudicated D.G. a delinquent child for committing two acts of domestic violence. On July 12, 2012, the magistrate committed D.G. to DYS for a minimum of six months and a maximum period not

to exceed his 21st birthday. The magistrate suspended the commitment and placed D.G. on probation. On that same date, the trial court adopted the magistrate's decision.

## C. Appeals

{¶ 14} On March 26, 2013, D.G. filed notices of appeal from the trial court's October 21, 2011 and July 12, 2012 judgments. D.G. argued that under the rule set forth in *In re Anderson*, 92 Ohio St.3d 63, 67, 748 N.E.2d 67 (2001), his time to appeal had not expired. D.G. asserted that the docket failed to indicate that D.G. was served with notice of the court's October 21, 2011 judgment entry.

{¶ 15} On March 14, 2013, this Court directed D.G. to address whether the court's judgment entries constituted "separate and distinct" entries and thus final, appealable orders.

{¶ 16} On March 25, 2013, appellant filed a motion that requested the trial court to issue final, appealable orders.

{¶ 17} On March 26, 2013, the court committed D.G. to DYS for institutionalization in a secure facility for an indefinite term of a minimum period of six months and a maximum period not to exceed his 21st birthday. The court suspended the commitment and placed D.G. on probation.

## II. ASSIGNMENTS OF ERROR

{¶ 18}  Appellant timely appealed the trial court's judgments and raises

identical assignments of error in each case:

First Assignment of Error:

The juvenile court abused its discretion when it found [D.G.] competent to stand trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution; Article I, Section 16 of the Ohio Constitution; and R.C. 2945.37

Second Assignment of Error:

The juvenile court committed plain error when it failed to appoint a guardian *ad litem* for [D.G.], in violation of R.C. 2151.281(A) and Juv.R. 4(B).

Third Assignment of Error:

[D.G.] was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

### III.  ANALYSIS

### A.  COMPETENCY

{¶ 19}  In his first assignment of error, D.G. asserts that the trial court

incorrectly determined that he was competent to stand trial.  He contends that the

record shows that he did not understand the charges against him or the potential

penalties that he faced and thus that he did not have a rational or factual

understanding of the proceedings against him.

### 1.  Failure to Object to the Magistrate's Decision

{¶ 20} D.G. did not object to the magistrate's decision finding him competent to stand trial. Juv.R. 40(D)(3)(b)(i) requires a party to file written objections to the magistrate's decision within fourteen days. If no one files objections, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision. Juv.R. 40(D)(4)(c). Juv.R. 40(D)(4)(e)(i) allows the court to enter judgment within the fourteen–day period, but the timely filing of objections operates as an automatic stay until the court disposes of those objections.

{¶ 21} Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for plain error, a party shall not assign as error on appeal the court's adoption of any finding of fact or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Thus, the failure to file written objections challenging a finding of fact or conclusion of law precludes a party from assigning as error on appeal the court's adoption of that finding or conclusion, absent plain error. "The waiver under [former] Juv.R. 40(E)(3)(b) embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal." *In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist. 1998). The plain-error

doctrine is applicable in civil cases only when the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122–123, 679 N.E.2d 1099 (1997).

{¶ 22} In the case at bar, D.G. has not shown that the court committed plain error.

## 2. Standard for Determining Competency

{¶ 23} "Due process principles forbid subjecting a legally incompetent criminal defendant to trial." *State v. Braden,* 98 Ohio St.3d 354, 785 N.E.2d 439, 2003–Ohio–1325, ¶114, citing *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995). "[T]he right not to be tried or convicted while incompetent is as fundamental in juvenile proceedings as it is in criminal trials of adults." *In re Bailey,* 150 Ohio App.3d 664, 2002–Ohio–6792, 782 N.E.2d 1177, ¶10 (2nd Dist.).

{¶ 24} Until September 30, 2011, the Revised Code did not contain any provisions for determining a juvenile's competence to stand trial. *In re Stone,* 12th Dist. Clinton No. CA2002–09–035, 2003–Ohio–3071, ¶7. With the enactment of 2011 H.B. 86 (effective September 30, 2011), the juvenile code now contains statutory provisions that govern juvenile competency determinations. R.C. 2152.51-2152.59. However, because D.G's competency hearing was held before September 30, 2011, we apply the law that existed before the enactment of R.C. 2152.51 through 2152.59.

{¶ 25} Under prior law, R.C. 2945.37, which governs competency for adults, also governed competency for juveniles, so long as the standards applied were consistent with juvenile norms. *In re York,* 142 Ohio App.3d 524, 536, 756 N.E.2d 191 (8th Dist. 2001); *In re McWhorter*, 12th Dist. Butler No. CA94-02-047 (Dec. 5, 1994). Under R.C. 2945.37(G), a "defendant is presumed competent to stand trial unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or presently assisting in his defense." The test for competency is whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *In re Anderson,* 5th Dist. Tuscarawas No. 2001AP030021, 2002-Ohio-776; *In re Kristopher F.,* 5th Dist. Stark No. 2006CA00312, 2007–Ohio–3259, ¶ 25.

{¶ 26} In *Kristopher F.*, ¶¶26-28, the court set forth a more specific analysis that applies in juvenile competency determinations:

> "In performing competency evaluations, the courts have recognized that there are practical differences between juvenile delinquency proceedings and adult criminal prosecutions. As a result, these differences have been taken into consideration by the juvenile court in determining whether an alleged juvenile delinquent is capable

of understanding the nature and objective of the proceedings and in assisting in his or her own defense. *In re McWhorter, Supra.*

Factors which have been considered in juvenile competency evaluations include, appellant's age and cognitive and intellectual development, appellant's problems with receptive or expressive language, the ability to understand and communicate during competency testing, the complexity of the case and the attorney's ability to simplify and explain complex issues, the seriousness of the charges in relation to the stress they could cause appellant during trial, any mental condition that would adversely affect appellant's ability to understand the proceedings or work with counsel, appellant's ability to understand the nature of the charges and the potential penalties, appellant's ability to provide an adequate definition of the judge, defense attorney and prosecutor. *In re McWhorter, Supra.* Furthermore, a separate and important consideration is the manner in which the system affords the juvenile additional protections such as having a parent, guardian, or other person present with the child during the proceedings. *In re Stone,* Clinton App. No. CA2002-09-035, 2003-Ohio-3071. These factors provide a gauge to evaluate a juvenile's competency to stand trial and take into consideration the best interest of the child. A below average verbal IQ alone does not in and of itself, indicate that a defendant is not competent to stand trial. *In re McWhorter,* Supra.

When reaching a competency determination, the adequacy of the data relied upon by the expert who examined the defendant is a question for the trial court as the trier of fact. *State v. Williams* (1986), 23 Ohio St.3d 16, 19, 490 N.E.2d 906. An appellate court will not disturb a competency determination if there was "some reliable credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceeding against him." *State v. Williams, supra.*"

### 3. Application

{¶ 27} In the case at bar, the record contains some reliable, credible evidence to support the court's conclusion that D.G. understood the nature and objective of the proceedings against him. The competency evaluation constitutes some reliable,

credible evidence to support the trial court's competency determination.  The

August 4, 2011 evaluation observed that D.G. "reportedly" has been diagnosed

with schizophrenia and attention deficit hyperactivity disorder and that D.G.

"complains of short-term memory problems, saying that he often forgets names,

phone numbers, or similar information."  According to the evaluator, D.G. reported

that in June 2011, he bit his mother and tried to set the house on fire.  D.G. claims

that "he heard voices commanding him to do this."

{¶ 28} The evaluator determined that D.G. was competent and explained:

> "Regarding the competency to undergo legal proceedings,
> [D.G.] clearly understood the charges.  He acknowledged that he did
> have an attorney and that he had talked with him but did not know his
> name.  He was not sure what plea, if any, had been entered on his
> behalf.  He was able to correctly identify the various roles and
> responsibilities in the courtroom.  He related that the judge 'rules on
> what he thinks people did.'  He described the jury as 'giving their
> view on what they saw.'  He identified the job of his attorney [as] 'to
> defend me,' and of the prosecuting attorney of 'the opposite of that.'
> He is unsure of what the penalty would be for the allegations against
> him and he continued to emphasize that he did not remember the most
> recent event involving assaulting his mother and attempting to start a
> fire.  He did say, 'I don't [know] why I would be found guilty[;] I
> think it was the schizophrenia that caused it[,]' suggesting that he is
> certainly able to formulate a defense strategy.
> [D.G.] was well oriented in all spheres.  He was able to
> correctly identify the month, the date, the year, and the most recent
> important holiday.  He knew his current whereabouts and the purpose
> for the interview.  He was able to count backwards from 20 by 3's
> correctly with one mistake.  He could spell the word WORLD
> forwards and backwards.  Although he reported a history of hearing
> voices, he was not currently showing signs or symptoms suggestive of
> gross distortions or misinterpretations of reality.
>                * * * *

His current mental status suggests that he is well oriented and reasonably knowledgeable about the roles and responsibilities of the legal system.  He understands the charges against him and understands the trial proceedings.  He appears to have an adequate ability to assist counsel in presenting a defense."

{¶ 29}  The evaluator thus concluded "that beyond a reasonable psychological certainty, [D.G.] is competent to undergo juvenile court proceedings.  His psychiatric condition appears well managed at present.  His intellectual functioning and fund of information is adequate to the task."  Because the evaluator's report constitutes some reliable and credible evidence to support the trial court's competency determination, we will not disturb its determination.

{¶ 30}  We do not agree with D.G. that his memory problems should have led the court to conclude that he was incompetent.

"In Ohio, 'amnesia alone is not sufficient to render the accused incompetent to stand trial.'  *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.  'Although "there are no definitive judicial explanations" of what constitutes the ability to assist in one's own defense, * * * it is clear that the cases without exception reject the notion that an accused possesses that ability only if he is able to remember the circumstances of the crime with which he is charged.'  *Id.* at 151, 495 N.E.2d 407, quoting *Morrow v. State* (1980), 47 Md.App. 296, 423 A.2d 251."

*State v. Lennox*, 11th Dist. Lake No. 2010-L-104, 2011-Ohio-5103, ¶56.

{¶ 31}  To the extent D.G. asserts that his conduct at the adjudicatory hearing shows that he was incompetent, the magistrate reasonably could have believed that D.G.'s conduct was a charade.  At one point, the magistrate stated:  "[D]on't play games with this."  It is well-established that the credibility of the witnesses and the

weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Thus, the magistrate was not required to believe D.G's statements that he thought his name was "Zeke cotade" and that he did not recall biting his mother or attempting to set the house on fire.

{¶ 32} Accordingly, based upon the foregoing reasons, we overrule D.G.'s first assignment of error.

B.

GUARDIAN *AD LITEM*

{¶ 33} In his second assignment of error, D.G. argues that the trial court plainly erred by failing to appoint a guardian *ad litem* to represent his interests in the 2012 case. He asserts that the court should have appointed a guardian *ad litem* to represent his interests because the record shows that an actual conflict existed between D.G. and his parents.

{¶ 34} D.G. further argues that although the juvenile court appointed attorney Bevins to act as both counsel and guardian *ad litem* in the 2011 case, Bevins never actually acted as D.G.'s guardian *ad litem* during the juvenile court proceedings and thus the court should have appointed a new guardian *ad litem*.

{¶ 35} We addressed these same arguments in *In re D.A.G.*, 4th Dist. Ross

Nos. 13CA3366 and 13CA3367, 2013-Ohio-3414, ¶¶44-55, and rejected both.  We

explained:

> "Initially, we note that D.G. did not request the court to appoint
> a guardian *ad litem* in the 2012 case.  D.G. also did not object to the
> court's failure to appoint a guardian *ad litem* in the 2012 case.  He
> further did not object to attorney Bevins's dual role in the 2011 case
> or raise any suggestion that Bevins failed to act as his guardian *ad
> litem.*
>
> Some courts have held that a juvenile need not request a trial
> court to appoint a guardian *ad litem* or object to a court's failure to
> appoint one when a mandatory duty to do so exists.  *In re Dennis,*
> 11th Dist. No.2006–A–0040, 2007–Ohio–2432, ¶29.  Other courts
> have reviewed an appellant's failure to request the trial court to
> appoint a guardian *ad litem* or to object using a plain error analysis.
> *In re M.T.,* 6th Dist. No. L–09–1197, 2009–Ohio–6674, ¶¶14–15; *In
> re A.K.,* 9th Dist. No. 09CA0025–M, 2009–Ohio–4941, ¶8, reversed
> on other grounds sub nom *In re Cases Held for the Decision in D.J.S.,*
> 130 Ohio St.3d 253, 2011–Ohio–5349, 957 N.E.2d 288; *In re Smith,*
> 3rd Dist. No. 14–05–33, 2006–Ohio–2788, ¶35; *In re McHugh
> Children,* 5th Dist. No.2004CA00091, 2005–Ohio–2345, ¶37.  In *In
> re Slider,* 160 Ohio App.3d 159, 2005–Ohio–, 826 N.E.2d 356 (4th
> Dist.), we briefly mentioned the plain error doctrine but did not
> explicitly apply it.  We stated:
>
> "Ordinarily, rights are deemed waived it they are not raised
> before the trial court and will be enforced upon appeal only if the
> error constitutes plain error.  However, this court has previously
> reversed a finding of delinquency when the trial court failed to
> appoint a guardian *ad litem* or at least inquire further whether a
> guardian *ad litem* was necessary, even though an objection was not
> made."
> *Id.* at ¶ 11 (citations omitted).  *Cf. In re A. G.B.,* 173 Ohio App.3d
> 263, 2007–Ohio-4753, 878 N.E.2d 49, ¶15 (plurality opinion, with
> one judge concurring in judgment only and one judge dissenting).
> Thus, based upon our *Slider* decision, D.G.'s failure to object or to
> request a guardian *ad litem* does not preclude appellate review.
> * * *

A guardian *ad litem* is a "person appointed to protect the interests of a party in a juvenile court proceeding." Juv.R. 2(O). "The role of guardian *ad litem* is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the child's best interest." *In re Baby Girl Baxter,* 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985).

Both R.C. 2151.281(A) and Juv.R. 4(B) require a juvenile court to appoint a guardian *ad litem* in certain circumstances. R.C. 2151.281(A) provides:

The court shall appoint a guardian *ad litem* to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:

(1) The child has no parent, guardian, or legal custodian.

(2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian.

Juv.R. 4(B) provides:

The court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

(1) The child has no parents, guardians, or legal custodian; [or]

(2) The interests of the child and the interests of the parent may conflict * * *.

The rule requires a juvenile court to appoint a guardian *ad litem* upon the possibility of conflict, but the statute requires the juvenile court to appoint a guardian *ad litem* if the court determines that a conflict indeed exists. Both the statute and the rule are mandatory, and a court's failure to appoint a guardian *ad litem* when required constitutes reversible error. *In re S.B.,* 183 Ohio App.3d 300, 2009–Ohio–3619, 916 N.E .2d 110 (10th Dist.), ¶12, citing *In re K.J.F.,* 2nd Dist. No. 2003–CA–41, 2004–Ohio–263, ¶23, citing *In re Sappington,* 123 Ohio App.3d 448, 452, 704 N.E.2d 339 (2nd Dist.1997), and *In re Spradlin,* 140 Ohio App.3d 402, 406, 747 N.E.2d 877 (4th Dist.2000). "[T]he juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and child." *Sappington,* 123 Ohio App.3d at 453–454, citing *Trickey v. Trickey,* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). We thus review the trial court's determination regarding

whether a potential conflict of interest exists between the parent and child for an abuse of discretion. *In re Wilson,* 4th Dist. No. 04CA26, 2004–Ohio–7276, ¶21; *Spradlin,* 140 Ohio App.3d at 407; *Sappington,* 123 Ohio App.3d at 453–454. *But, see, In re A.K.,* 9th Dist. No. 26291, 2012–Ohio4430, ¶12; *In re C.W.,* 4th Dist. No. 10CA892, 2010–Ohio–5633, ¶9 (stating that whether the court possessed a mandatory duty to appoint a guardian *ad litem* is a question of law). The question is whether the record "reveals a strong enough possibility of conflict of interest between parent and child to show that the juvenile court abused its discretion" by not appointing a guardian *ad litem. Sappington,* 123 Ohio App.3d at 454.

A "colorable claim of conflict" frequently arises in a delinquency proceeding when the parent speaks against the child's penal interests or files delinquency charges against the child. *In re Bostwick,* 4th Dist. No., 2005–Ohio5123, ¶¶ 8–9, citing *In re Howard,* 119 Ohio App.3d 201, 207, 695 N.E.2d 1 (1st Dist.1997). The potential for conflict results because the parent's interests in seeking the juvenile court's assistance may be wholly inconsistent with the child's interests. *Sappington,* 123 Ohio App.3d at 454. Thus, when a parent or legal guardian instigates a delinquency proceeding or speaks out against the child's penal interests, the juvenile court ordinarily must conduct "a 'thorough inquiry' * * * to determine whether a conflict of interest exists such that the court must appoint a guardian *ad litem.*" *Bostwick* at ¶8. However, courts have been unwilling to adopt a bright-line rule that would require the appointment of a guardian *ad litem* in every case in which a child's parents or legal guardians initiate a delinquency proceeding against their child. *Howard,* 119 Ohio App.3d at 207. Instead, the courts have examined the record to determine whether the parent or legal guardian expressed any interest inconsistent with the child's interests.

For instance, courts have found no potential for conflict when the victim of the child's delinquent act was a family member and when neither parent (nor a legal guardian) spoke against the child's penal interests or expressed a desire inconsistent with the child's interests. In *In re Wilkins,* 3rd Dist. No. 5–96–1 (June 26, 1996), the court found no conflict of interest between the father and the child even though the delinquency charge involved the child hitting his father. In reaching its decision, the court observed that the father did not attempt to persuade the court to act in any manner inconsistent with the child's interests. The court explained:

"Timothy's father did not attempt to persuade the court in any manner that would be consistent with an understanding that he was not acting in Timothy's best interests. Indeed, the record reveals just the opposite; that Timothy's father was acting in Timothy's best interests. When the court suggested an institution remedial in nature, as opposed to the harsher environment of a DYS facility, Timothy's father did not object or demand that Timothy be placed in the latter facility. Timothy and his father did not argue or have any contentious words at hearing. In fact, Timothy's father seemed most concerned with the court understanding and helping Timothy with his substance abuse addiction."

Similarly, in *In re A.K.,* 9th Dist. No. 09CA0025–M, 2009–Ohio4941, *supra,* the court determined that a potential for conflict did not exist even when the child's parents called law enforcement after the child's sister alleged that the child had sexually assaulted her. In concluding that a potential for conflict did not exist, the court observed that the child's parents did not testify against him and did not recommend that he be committed. *Id.* at ¶11. Moreover, the child's parents "appeared with him at his adjudication and disposition hearings and, more than once, expressed concern over the length and severity of the disposition that [the child] might receive." *Id.*

In contrast, we have found that a trial court abused its discretion by failing to appoint a guardian *ad litem*—or by failing to inquire further into whether a conflict of interest existed sufficient to warrant the court in appointing a guardian *ad litem*—when the facts showed that the child's legal guardians' interests were not aligned with the child's interests. In *Slider,* for example, we determined that a sufficient potential for conflict between the child and the child's legal guardians existed when the child's legal guardians were unwilling to hire an attorney for the child, when they refused to take the child home with them because they feared for their daughter's safety, and when they requested the trial court to institutionalize the child. *In re Slider,* 160 Ohio App.3d 159, 2005–Ohio–1457, 826 N.E.2d 356 (4th Dist.), ¶12. *Accord In re Wilson* at ¶18 (concluding that trial court abused its discretion by failing to appoint guardian *ad litem* when the child's step-brother was the victim, the child's mother testified for the prosecution, the child's mother and father recommended that the child be committed to DYS, and the child previously victimized other family members); *Sappington,* 123 Ohio App.3d at 454–455 (determining that the juvenile court abused its discretion by failing to

appoint a guardian *ad litem* for the child when the child's parents previously filed domestic violence charges against the child, had sought to place the child out of the home, and had convinced the minor that he did not need an attorney); *In re K.J.F., supra* (concluding that the juvenile court abused its discretion by failing to appoint a guardian *ad litem* for the child's delinquency-related proceedings, which included his original adjudication and the subsequent revocation of probation for the rape of his half-sister, when the child's step-father stated that the family did not want the child to return to their home where the victim lived and when the child's mother informed the court that she "did not feel [she] could make choices in [the child's] best interest").

The case at bar bears more similarity to *A.K.* and *Wilkins* than the *Slider/Sappington* line of cases. Unlike the parents in *Slider* and *Sappington,* D.G.'s parents did not request the court to institutionalize D.G. Instead, D.G.'s mother wrote a heart-felt note to the court requesting that the court not commit her child to DYS and imploring the court to return D.G. to his home. At no point during the hearing did either D.G.'s mother or father speak against his penal interest. Thus, even though the charges involved domestic violence against D.G.'s family members, the record does not demonstrate that a potential for conflict existed so as to warrant the court in appointing a guardian *ad litem.* Consequently, we disagree with D.G. that the trial court plainly erred by failing to appoint a guardian *ad litem* to represent him during the probation violation proceedings in the 2012 case.

D.G. further asserts that the trial court should have appointed a guardian *ad litem* to represent him during the probation violation proceedings in the 2011 case. However, on June 20, 2011, the court appointed attorney Bevins to act as counsel and guardian *ad litem* for D.G. Although D.G. claims that Bevins failed to act as his guardian *ad litem,* he has not raised Bevins's alleged failure as a separate assignment of error and also has not asserted that Bevins's roles as counsel and guardian *ad litem* conflicted.[FN3] Therefore, we do not consider either issue. Nor do we express any opinion regarding the merits of either argument. Nothing in the record affirmatively demonstrates that attorney Bevins failed to act as D.G.'s guardian *ad litem* and counsel throughout the probation violation proceedings filed in the 2011 case."

{¶ 36} Thus, based upon similar reasons, we do not believe the trial court plainly erred by failing to appoint a guardian *ad litem* in the 2012 case or a new guardian *ad litem* in the 2011 case. The record as a whole does not demonstrate a strong enough possibility of a conflict such that the court was required to appoint a guardian *ad litem.*

## C.  EFFECTIVE ASSISTANCE OF COUNSEL

{¶ 37} In his third assignment of error, D.G. argues that he did not receive effective assistance of counsel. D.G. asserts that trial counsel was ineffective by stipulating to the evaluation report and by failing to object to the trial court's finding of competency.

{¶ 38} The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An accused juvenile has a constitutional right to counsel, and the same rights to effective assistance of counsel as an adult criminal defendant. *In re Lower,* 4th Dist. Highland No. 06CA31, 2007-Ohio-1735, ¶37, citing *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Thus, we apply the same Sixth Amendment

effective assistance of counsel principles that apply in criminal proceedings.  See *In re B.C.S.,* 4th Dist. Washington No. 07CA60, 2008-Ohio-5771.

{¶ 39} To prevail on a claim of ineffective assistance of counsel, D.G. must show (1) his counsel's performance was deficient in that it fell below an objective standard of reasonable representation, and (2) the deficient performance prejudiced his defense so as to deprive him of a fair trial.  *E.g., State v. Smith,* 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (2000), citing *Strickland*, 466 U.S. at 687; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. To establish prejudice, D.G. must show that there is a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different.  *E.g., State v. White,* 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); *Bradley,* paragraph three of the syllabus.  "Failure to establish either element is fatal to the claim."  *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶14.  Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a courts need to consider the other.").

{¶ 40} In the case at bar, even if trial counsel performed deficiently by stipulating to the competency evaluation and by failing to object to the court's competency determination, D.G. cannot establish that the alleged deficient

performance affected the outcome of the proceedings.  As we explained in our discussion of D.G.'s first assignment of error, some competent and reliable evidence supports the trial court's competency finding.  Thus, even if trial counsel had had objected, D.G. cannot show that the trial court would have refused to consider the evaluation and found D.G. incompetent.  Moreover, D.G. fails to show that if trial counsel had not stipulated to the evaluation, the proceedings would have turned out any differently.  D.G. fails to establish that if trial counsel had not stipulated to the evaluation, then a competency hearing would have been held and the trial court would have determined D.G. was incompetent.  D.G. only speculates that the result would have been different.  Speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶68. Consequently, D.G. cannot show that the outcome would have been any different if trial counsel had not stipulated to the evaluation or had objected.

{¶ 41}  Accordingly, based upon the foregoing reasons, we overrule D.G.'s third assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

Hoover, J., concurs in judgment only and dissents in part:

{¶ 42} I concur in judgment only and dissent in part from the principal opinion. The principal opinion uses a similar analysis to the one used by this court in *In re D.A.G.,* 4th Dist. Ross Nos. 13CA3366 and 13CA3367, 2013-Ohio-3414, ¶¶ 44-55 to overrule D.G.'s second assignment of error. Because the appeals at bar pertain to proceedings that occurred before the revocation proceedings at issue in the previous appeals, the facts of the case at bar should be analyzed using the appropriate standards and a similar analysis should not necessarily be relied upon in deciding the issues regarding the failure to appoint the guardian *ad litem* in Case No. 2012DEL0153 and the duality of attorney/guardian *ad litem* in Case No. 2011DEL0208.

{¶ 43} Because D.G. (also referred to as D.A.G.) failed to object to the fact that he was not appointed a guardian *ad litem* in Case No. 2012DEL153, his appeal is subject to a plain error analysis. Although I believe that a guardian *ad litem* should have been appointed in Case No. 2012DEL153, I believe that the outcome of the trial would not have been any different had a guardian *ad litem* been appointed; therefore, I would affirm the judgment of the trial court in Case No. 2012DEL153/ App. Case No.13CA3382.

{¶ 44} In Case No. 2011DEL208, D.G. failed to object to the fact that his purported guardian *ad litem* did not act in the capacity of a guardian *ad litem*.

Therefore, D.G.'s appeal is again subject to a plain error analysis. Likewise, even though I agree with D.G. that the appointed guardian *ad litem* never acted in the capacity of a guardian *ad litem*, when applying the plain error analysis, I do not believe that the outcome of the trial would have been any different even if the guardian *ad litem* had completed an evaluation and a report. Consequently, I would also affirm the judgment of the trial court in Case No. 2011DEL208/ App. Case No. 13CA3383.

{¶ 45} The procedural postures of these two consolidated cases (13CA3382 and 13CA3383) are anomalous. The cases, *In re D.A.G.,* 4th Dist. Ross Nos. 13CA3366 and 13CA3367, 2013-Ohio-3414, were appeals from the trial court's decisions in January 2013 to revoke the probation of appellant, D.G. (also referred to as D.A.G.) The cases *sub judice* are the cases underlying the revocation proceedings. Normally, the appeals on these underlying cases would have been decided prior to any appeals on the revocation proceedings; however, the notices of appeal on these consolidated cases were not filed until April 25, 2013. This delay in filing the notices of appeal was justified due to the fact the D.G. was not served notice of the filing of the dispositional entries. *In re Anderson,* 92 Ohio St.3d 63, 67, 748 N.E.2d 67 (2001).

{¶ 46} In Case No. 2011DEL208, the victim of the domestic violence was D.G.'s mother, Mrs. G. On June 17, 2011, at D.G.'s initial appearance or

arraignment, the Court appointed attorney Walter Bevins to represent D.G. in the

dual capacity of attorney and guardian *ad litem.* After the appointment, the

following exchange took place between the trial court magistrate and Mrs. G:

> Mrs. G:  I want for him to be held at...uh...JDC until this Trial.
>
> Magistrate:  Do you feel like you can't control his conduct?
>
> Mrs. G:  Uh...no he's out of control.

{¶ 47}  In the adjudicatory hearing, Mrs. G. testified for the State and against

her own son as follows:

> Mrs. G.: He went off on another one of his tirades
>
> and...he...was hitting me and Samantha and yelling, calling me
>
> every name in the book and he tried to set the house on fire
>
> and he grabbed my lighter from me to set the house on fire.
>
> He did not once but twice and when I grabbed the lighter from
>
> him, he bit me on the hand and...(sigh) I ended up calling the
>
> police and...trying to get Samantha calm down and...that's
>
> pretty much it.

{¶ 48}  As for Case No. 2012DEL153, the victims on the two counts of

domestic violence were D.G.'s mother and sister.  The trial court did not appoint a

guardian ad litem for D.G.  In April 2012, at the initial appearance or arraignment

in this matter, the following exchange took place:

Attorney:  On behalf of my client your Honor....uh...he has asked me to request the Court that foster care placement be looked into as an alternative as opposed to this gentlemen, this young man just being locked...uh...it seems to me that the majority of his problems stem from the home setting and I would ask that some-some placement other than home be considered.  Nothing further your Honor.

Magistrate:  Parents have anything they want to tell me?

Mrs. G:  I disagree I think it is his medication and he needs to be put into a psychiatric facility.

Magistrate:  Has he been going to school?

Mrs. G.:  No, he has not, he has been refusing to.

The trial court then decided to remand D.G. to the custody of the sheriff's department to be held at the juvenile detention center pending disposition or trial.

{¶ 49}  On May 11, 2012, an adjudicatory hearing was scheduled. The State and D.G.'s attorney purportedly had an agreement; however, the trial court was not satisfied that D.G. agreed to the terms of the agreement; and therefore, the adjudication was rescheduled.

{¶ 50}  On May 25, 2013, D.G. appeared for his adjudication on the two counts of domestic violence in Case No. 2012DEL153, an unruly charge, and the

probation violation for Case No. 2011DEL208. In that trial, the probation officer testified that Mrs. G. reported that D.G. was not taking his medications and was not following the rules in the home and was leaving without permission. D.G. also had not attended school as required.

{¶51} Mrs. G. once again testified for the State. D.G.'s mother testified that D.G. had kicked her in the leg and hit her in the head. She stated that D.G. had "targeted" her leg as he was aware of her condition that it had been broken in two places. She also told the court that on the same day, D.G. punched his sister in the head and bit her a couple of times. Mrs. G. said the altercation was "pretty violent." She said there was not much she could do as she was in a wheelchair. Mrs. G. also testified that D.G. had not been obeying her or her husband.

{¶ 52} D.G.'s sister, Miss G., also testified against him at the trial. She testified that D.G. knocked her down, hit her in the head and was "punch-biting" her. Miss G. also stated that D.G. bit her on her hand and her arm.

{¶ 53} D.G. testified at the trial also. D.G. testified that he missed school because a person was making him smoke weed under duress. D.G. admitted to biting his sister and hitting her in the head several times. D.G. further admitted to kicking his mother "with like the back of [his] heel or something."

{¶54} This court stated in *In re Wilson,* 4th Dist. Washington No. 04CA26, 2004-Ohio-7276, ¶¶ 12-13:

R.C. 2151.281(A)(2) states that a court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child when "[t]he court finds that there is a *conflict of interest between the child and the child's parent ...*" (Emphasis added.) Similarly, Juv.R. 4(B) requires that a guardian ad litem be appointed to protect the interests of a child whenever the interests of the child and the interests of the parent may conflict.

These provisions do not require that an actual conflict of interest be demonstrated. Rather, a showing that the interests "may conflict" will suffice to trigger the need to appoint a guardian ad litem. See *In re Spradlin* (2000), 140 Ohio App.3d 402, 407, 747 N.E.2d 877; *In re Sappington* (1997), 123 Ohio App.3d 448, 453, 704 N.E.2d 339. The failure to appoint a guardian ad litem, when required by R.C. 2151.281(A) and Juv.R. 4(B), constitutes reversible error. *In re Spradlin,* supra, at 406, 747 N.E.2d 877 *In re Sappington,* supra, at 452, 704 N.E.2d 339; *In re K.J.F.,* Clark App. No.2003–CA–41, 2004–Ohio–263, at ¶ 23.

**{¶55}** In light of the above cited case law, it would appear that a guardian ad litem would be required in both cases. At the initial appearance in Case No.

2011DEL208, Mrs. G. testified that D.G. was out of control and that she could not handle him. She wanted the court to hold D.G. in the juvenile detention center. At the initial appearance in Case No. 2012DEL153, Mrs. G. testified that D.G. should be held in a psychiatric facility while D.G.'s attorney asked that he be placed in foster care due to home issues. At these early points in these proceedings, the trial court should have determined that a "conflict of interest between the child and the child's parent" existed. In Case No. 2012DEL153, the trial court should have appointed a guardian *ad litem* then. In Case No. 2011DEL208, the appointed guardian *ad litem* should have acted as such and proceeded with his investigation as a guardian *ad litem*.

{¶56} During the adjudicatory hearings in both cases, it was clear that the victims of the cases were family members, D.G.'s mother and sister. Even if the conflict of interest was not clear at the arraignment, the conflict should have been clear at this point. The case at bar is similar to the facts in *Wilson, Id.* at ¶¶15-16. The perpetrator and the victims were in the same family unit. As the court in *Wilson* stated, "[t]his placed the appellant's parents, particularly his mother, in a very awkward position. Appellant's mother testified for the prosecution at the adjudicatory hearing...* * * The fact that a conflict of interest may exist required the appointment of a guardian ad litem."

{¶57} When overruling D.G.'s second assignment of error, the principal opinion relies on the fact that "D.G.'s parents did not request the court to institutionalize D.G. Instead, D.G.'s mother wrote a heart-felt note to the court requesting that the court not commit her child to DYS and imploring the court to return D.G. to his home." However, this "heartfelt letter" did not even exist at the time of these underlying cases. This "heartfelt letter" is not in the record for these underlying cases. When determining whether to appoint a guardian *ad litem*, the appointment should be made early in the proceedings, not after the disposition. In order to be effective in the process, the guardian *ad litem* needs to be active throughout the proceedings.

{¶58} Even though in Case No. 2011DEL208, a guardian *ad litem* was actually appointed, the record is completely devoid of any evidence that the appointed guardian *ad litem* actually acted in that capacity. There is no guardian *ad litem* report. There is no evidence that the guardian *ad litem* did any type of investigation into D.G.'s home or family life. Furthermore, there is no evidence that the guardian *ad litem* reviewed D.G.'s medical, psychological, or psychiatric records, if any. No evidence in the record exists that the guardian *ad litem* reviewed any of D.G.'s school records either. Therefore, even though the Court appointed a guardian *ad litem* in Case No. 2011DEL208, the guardian *ad litem* did not act in such capacity.

{¶59} This court stated in *State v. Alexander,* 4th Dist. Adams No. 12CA945, 2013-Ohio-1913, ¶¶ 10-11:

Under Crim.R. 52(B) "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Thus, there are 'three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." Courts have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' " *State v. Lynn,* 129 Ohio St.3d 146, 2011–Ohio–2722, 950 N.E.2d 931, ¶ 13, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

"Even when all three prongs are satisfied, a court still has discretion whether or not to correct the error." *Lynn* at ¶ 14. The Supreme Court of Ohio has acknowledged the discretionary aspect of Crim.R. 52(B) by cautioning courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a

manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91,

372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶60}** In the case at bar, although I believe that an error has occurred, the error is not obvious, as my opinion differs from the principal opinion. In addition, I do not believe that the trial court's error affected the outcome of the trial. Thus, I believe that only one of the three prongs has been satisfied. This is not a case wherein plain error needs to be noticed to prevent a manifest miscarriage of justice.

**{¶ 61}** Therefore, I would affirm the judgments of the trial court with respect to each case.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.:  Concurs in Judgment and Opinion.
Hoover, J:    Concurs in Judgment Only and Dissents in Part with Opinion.


For the Court,


BY:    _____
       Matthew W. McFarland, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**