[Cite as *Whitesed v. Huddleston*, 2021-Ohio-2400.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| ALLIE J. WHITESED, | : | Case No. 21CA3 |
| Plaintiff-Appellant | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| JONATHAN R. HUDDLESTON, | : | |
| Defendant-Appellee. | : | **RELEASED 7/13/2021** |

_____

APPEARANCES:

Stephen D. Brown, Lancaster, Ohio, for appellant.

Charles C. Postlewaite, Columbus, Ohio, for appellee.

_____

Hess, J.

{¶1}   Allie J. Whitesed appeals from a judgment of the Pickaway County Common Pleas Court, Juvenile Division, that overruled her objections to the magistrate's decision and designated Jonathan R. Huddleston the residential parent and legal custodian of A.J.W.  Whitesed contends that the trial court erred in adopting the magistrate's decision without appointing a guardian ad litem for the child. Whitesed also claims that the trial court should not have adopted the magistrate's decision granting her attorney's request to withdraw the morning of the trial and determining that she had constitutionally sufficient notice of the trial. However, we find that the magistrate was not required to appoint a guardian ad litem because there were no allegations of abuse or neglect. The trial court properly adopted the magistrate's decision allowing Whitesed's attorney to withdraw because Whitesed knowingly chose

not to appear for the trial and repeatedly violated court orders and deadlines. The trial court did not violate Whitesed's due process rights when it proceeded ex parte with the trial because it provided notice of the trial date to Whitesed when it recorded it on the docket and notices were sent to her attorney, who informed Whitesed of the hearing date. We overrule Whitesed's assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} Whitesed and Huddleston are the parents of A.J.W., born in July 2018. In December 2018, Whitesed filed a complaint for allocation of parental rights and responsibilities in which she alleged she and Huddleston were the parents of A.J.W. as determined by a paternity test and she sought an order allocating parental rights and responsibilities. The complaint contained no allegations of abuse or neglect. Huddleston answered and admitted the allegations and requested a shared parenting order. Huddleston's answer contained no allegations of abuse or neglect. A custody hearing was set for August 12, 2019. Prior to the hearing, Huddleston filed a notice of his successful completion of a parenting seminar. The custody hearing was not held on August 12 and instead, on that date, the court issued a notice of a pretrial hearing on October 8, 2019. Huddleston was granted permission to attend the October pretrial hearing via telephone because he is in the U.S. Military and would be in California for training.

{¶3} In October 2019, the magistrate issued an agreed temporary parenting time order in which Huddleston was given parenting time when he is on military leave. Huddleston was also entitled to use a video call conferencing service to communicate with A.J.W. on specific days and times of the week. Both parties were ordered to set up

an Our Family Wizard account to communicate with each other concerning A.J.W. Each parent was required to provide a relocation notice, if applicable, and was given equal access to the child's records, day care, and school activities.

{¶4} On December 20, 2019, the court held a telephonic conference, and the magistrate issued an order stating that Whitesed had failed to appear for the conference and had terminated her attorney the day before. The order states that the magistrate attempted to reach Whitesed and left a voicemail message for her to contact the court or the conference would proceed without her. Whitesed failed to contact the court so the conference proceeded and the magistrate issued a holiday parenting schedule based upon Huddleston's holiday leave. On that same date, Whitesed's attorney filed an application to withdraw as counsel, which was granted, in which he explained that two days before the telephone conference, Whitesed terminated him and instructed him not to participate in the telephonic conference on her behalf because she had retained a new attorney who would be handling the conference for her. However, neither Whitesed nor a new attorney participated in the December 20, 2019 conference. Whitesed's new attorney made a notice of appearance on December 27, 2019 and served it on Huddleston's attorney, but the notice of appearance is not on the docket. However, the record shows that thereafter the clerk's office began to serve Whitesed's new attorney with court filings.

{¶5} In January 2020, Huddleston filed a contempt motion against Whitesed for violating the October and December 2019 parenting orders. He also sought attorney's fees and a psychological examination of Whitesed to assist the court in determining parental rights and responsibilities. Huddleston's counsel sought attorney's fees and

reimbursements for medical support Huddleston incurred because Whitesed had not provided him with A.J.W.'s social security card so that he could enroll the child in his military medical insurance, in violation of the court order requiring her to do so. In an affidavit in support of his motions, Huddleston stated that Whitesed refused to allow him to visit with A.J.W. as outlined in the parenting orders and was imposing additional, onerous requirements upon him that were not included in the orders. He provided detailed descriptions of each incident. Huddleston also stated that although he had enrolled in Our Family Wizard for communications, Whitesed had not, contrary to the court's order. Huddleston explained how, during one of his visits, Whitesed called the Columbus Police Department and asked them to do a wellness check on A.J.W. because she believed Huddleston had kidnapped A.J.W. and was planning to leave the state. Included with Huddleston's affidavit were copies of email communications between Huddleston and Whitesed's attorneys and text messages between Whitesed and Huddleston in which Whitesed, either directly in text messages or through her attorney, refused to comply with the parenting orders. Although the record includes hearing date notice for these motions, it does not appear that a hearing was held. We note that one of the hearing dates was March 16, 2020, which was near the time government policies addressing the pandemic commenced.

{¶6}   In February 2020, Whitesed signed an affidavit in which she responded to the allegations in Huddleston's January 2020 motion for contempt. Whitesed stated that she did not allow A.J.W. to visit Huddleston because the truck that had been sent to transport A.J.W. did not accommodate the child's car seat. However, Whitesed's

affidavit was not submitted to the court until late May 2020, in support of Whitesed's own contempt motion filed against Huddleston.

{¶7}   In late April and early May 2020, Whitesed underwent a psychological evaluation pursuant to the magistrate's order. In the psychologist's report, which was submitted to the court in July 2020, the psychologist stated that he had been delayed in submitting it because of the extended period of time Whitesed took to return a questionnaire and that she returned it only after the psychologist sent repeated emails and messages to the parties' attorneys.

{¶8}   Also in April and May 2020, Huddleston filed a motion to file an amended answer and a counterclaim for sole custody of A.J.W.[1] and a motion to compel discovery. Huddleston's request to amend his pleadings was based on allegations that Whitesed repeatedly failed to comply with the court's parenting orders and was attempting to alienate the child from Huddleston. These proposed amended pleadings did not contain allegations of abuse or neglect. Huddleston filed a motion to compel discovery because Whitesed had failed to answer discovery requests, which were due in April 2020. Emails between the attorneys show that on April 27, 2020, Whitesed's attorney stated that the matter of discovery would have to be taken up directly with Whitesed because the attorney would be asking to withdraw. Whitesed's attorney's April 27, 2020 motion to withdraw does not appear in the record. However, it appears that a copy of the motion was served on Huddleston's attorney and included in a filing submitted by Huddleston. In that motion, Whitesed's attorney stated that he had informed Whitesed of his intention to withdraw and he had provided her with upcoming court dates. There is nothing in the record showing any court response to counsel's

---

[1] The record indicates this motion was not addressed and is deemed denied.

April 27, 2020 motion to withdraw. However, at the November 2020 custody hearing, the magistrate acknowledged that Whitesed's attorney had made at least three motions to withdraw, and the court had previously not allowed it.

{¶9} In August 2020 the court set the date for the custody hearing for November 2 and November 3, 2020. The hearing notice states that copies of it should be sent directly to Whitesed, Huddleston, and their attorneys. However, a certificate from the clerk's office states that the notice was sent to the parties' attorneys by email and U.S. regular mail, with no indication that the clerk sent copies directly to Huddleston and Whitesed.

{¶10} In early September 2020, Huddleston filed a motion for an emergency temporary order for legal custody of A.J.W. In his affidavit supporting the motion, Huddleston stated that Whitesed had moved to Union County, Ohio and was living with two men.[2] Whitesed had posted three inappropriate photographs of A.J.W. on a social media site, one photograph showed the child standing inside a drawer with the room in disarray, one in which the child appeared to be eating eyeshadow, and one in which the child appeared to be smeared with a brown substance. Huddleston stated that he did not know where A.J.W. was residing, who the two men were, or who was taking care of A.J.W. while Whitesed was at work.

{¶11} The magistrate held an immediate hearing on the motion and issued an order in which, Huddleston, his attorney, and Whitesed's attorney participated, but Whitesed did not. The order stated that Whitesed's attorney attempted to contact her for information but at the time of the order the court had no additional information from

_____

[2] The record shows that Whitesed has resided at no less than four different addresses during the pendency of the case: Circleville, Ashville, Tarlton, and Carroll, Ohio.

Whitesed. The order set a subsequent video hearing on the emergency motion for September 9, 2020.[3] Both Whitesed and Huddleston attended the video conference with their attorneys. The magistrate denied the motion but ordered Huddleston to have companionship time with A.J.W. for five consecutive days in September, ordered Whitesed to enroll in Our Family Wizard, and ordered Whitesed to answer Huddleston's discovery requests on or before September 16, 2020. The order also reminded the parties that the custody hearing was scheduled for November 2 and 3, 2020. Although Whitesed's discovery responses were due in mid-April 2020 and the court ordered her to respond on or before September 16, 2020, in her affidavit, she states she did not provide discovery responses to her attorney until October 8, 2020.

{¶12} A third notice about the November final custody hearing was issued in mid-September and a final pretrial was set for October 16, 2020 via video conference. This notice was emailed to the parties' attorneys. In her affidavit, Whitesed acknowledged that her attorney advised her of the October 16 final pretrial.

{¶13} Whitesed also acknowledged that she was in communication with her attorney on October 27, 28, and 29, 2020, during which time they discussed the witnesses to be called at the custody hearing and she stated that she provided him with a list of witnesses. Whitesed's attorney filed a list of witnesses, a notice of intent to introduce evidence at trial, and he caused a subpoena to issue to compel the attendance of Officer Thomas of the Ashville Police Department to attend the custody hearing. Whitesed also stated that her attorney informed her on October 28, 2020, that he would be filing a motion to withdraw. Whitesed's attorney filed a motion to withdraw on October 28 and stated that Whitesed failed to provide him with evidence to be used

---

[3] A transcript of the hearing was not made part of the record.

at trial and that he had informed Whitesed that he was seeking to withdraw and informed her of the upcoming court dates.

**{¶14}** On November 2, 2020, at 9:00 a.m. the morning of the hearing, Huddleston, his attorneys, and Whitesed's attorney appeared for the custody hearing, but Whitesed was not present. The magistrate delayed the hearing and contacted other courtrooms looking for Whitesed. Whitesed did not appear and at approximately 9:30 a.m. Whitesed's attorney made an oral motion to withdraw. Whitesed's attorney stated that Whitesed had notice of the hearing and he spoke to her about it multiple times. The magistrate granted Whitesed's attorney's motion to withdraw and the hearing proceeded with Huddleston's witnesses.

**{¶15}** The magistrate issued a decision based upon all the evidence presented at the hearing that it was in the best interest of the child to be placed in the legal custody of Huddleston and ordered that Huddleston be designated the residential parent and legal custodian of A.J.W. Whitesed was given companionship time in accordance with the local rules for long distance. Whitesed filed objections with a supporting affidavit, and supplemental objections, which the trial court overruled.

**{¶16}** Relevant to this appeal, Whitesed objected to the magistrate's granting her attorney permission to withdraw and allowing the trial to go forward without her. The trial court found that Whitesed had engaged in multiple instances of delay and disregard for court orders and overruled her objection:

> Plaintiff had notice of Attorney DeBeneditto's intention to withdraw on October 28th. Instead of appearing for the November 2 trial and requesting a continuance to obtain new counsel, she chose to skip the trial altogether, much like her behavior for the December 20, 2019 hearing. After reviewing the history of this case, this Court comes to the conclusion

that Plaintiff knowingly chose to avoid the trial and knowingly chose not to oppose her attorney's withdrawal.

## II.  ASSIGNMENTS OF ERROR

**{¶17}** Whitesed presents the following assignments of error:

1.  The trial court erred in adopting the magistrate's decision granting custody of the minor child to appellee without complying with the mandatory provision of Ohio Juvenile Rule of Procedure 4(B)(5) requiring the appointment of a guardian ad litem. (R. 109, Dec. Entry).

2.  The trial court erred in adopting the magistrate's decision granting leave for appellant's counsel to withdrawal [sic] the morning of trial. (R. 109, Dec. Entry).

3.  The trial court erred in adopting the magistrate's decision determining appellant had constitutionally sufficient notice of trial. (R. 109, Dec. Entry).

## III.  LAW AND ANALYSIS

### A.  Appointment of Guardian ad Litem

**{¶18}** Whitesed contends that the trial court erred when it failed to appoint a guardian ad litem under Juv.R. 4(B)(5). Juv.R. 4(B)(5) states that a "court shall appoint a guardian ad litem to protect the interest of a child when * * * [a]ny proceeding involves allegations of abuse, neglect, or dependency, voluntary surrender of permanent custody, or termination of parental rights as soon as possible after the commencement of such proceeding * * * ." Whether Juv.R. 4(B)(5) imposes a mandatory duty upon the court to appoint a guardian ad litem and whether the court failed to discharge that duty constitute questions of law. We review questions of law de novo. *In re A.G.B.*, 173 Ohio App.3d 263, 2007-Ohio-4753, 878 N.E.2d 49, ¶ 11 (4th Dist.); *In re A.K.,* 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 12 ("Generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. * * *  Here, the

assignment of error challenges the trial court's failure to appoint a guardian ad litem pursuant to the mandatory requirements of R.C. 2151.281 and Juv.R. 4. Therefore, this issue presents a question of law, which we review de novo, affording no deference to the conclusion of the trial court.") However, where Juv.R. 4(B) is clearly applicable to a proceeding and the question is whether a guardian ad litem should have been appointed, an appellate court will review it for abuse of discretion. *In re Spradlin,* 140 Ohio App.3d 402, 407, 747 N.E.2d 877, 880 (2000) (an abuse-of-discretion standard applies to the trial court's decision whether to appoint a guardian ad litem when a purported conflict exists between the child and parent).

**{¶19}** Whitesed filed an action under R.C. 2151.23(F)(1) and R.C. 3109.04 for an allocation of parental rights and responsibilities between herself, an unmarried female who gave birth to A.J.W., and Huddleston, the father. Whitesed made no allegations of abuse, neglect, or dependency in her complaint and Huddleston made none in his answer or in his proposed supplemental pleadings. Thus, we find that this case involves neither a "private"[4] nor a governmental abuse, neglect, or dependency proceeding. Juv.R. 4(B)(5) is inapplicable and the requirement to appoint a guardian ad litem "as soon as possible after the commencement of such proceedings" was never triggered.

**{¶20}** Whitesed contends that the allegations of abuse and neglect were made in various filings throughout the proceeding. She contends that Huddleston requested a

---

[4] *But see In re A.G.B.,* 173 Ohio App.3d 263, 2007-Ohio-4753, 878 N.E.2d 49, ¶ 22 (Abele, J., dissenting, "It is my belief that R.C. Chapter 2151 does not apply to 'private' custody disputes (i.e., custody actions brought by private parties rather than children services agencies)."); *In re Shepard*, 4th Dist. Highland No. 99CA04, 1999 WL 809760 (Abele, J., concurring); *In re Shepard,* 4th Dist. Highland No. 2001-Ohio-2499 (Abele, P.J., concurring).

psychological evaluation of her out of concerns for the child's wellbeing and this concern constituted an allegation of abuse or neglect that triggered the court's obligation to appoint a guardian ad litem under Juv.R. 4(B)(5). The "threat to wellbeing" was in reference to Whitesed's refusal to follow the court-ordered parenting time, her manipulative efforts to prevent Huddleston from exercising his parenting time, and the impact that situation would have on the child's wellbeing. Nothing in Huddleston's motion alleged that the child was suffering abuse or neglect.

**{¶21}** Whitesed also cites to Huddleston's motion for emergency custody as another example of what she argues are allegations of abuse triggering the requirement for a guardian ad litem appointment. In his motion for emergency custody, Huddleston stated his concern that he did not know where his child was living, who was caring for the child while Whitesed was at work, and that Whitesed had posted inappropriate photographs of the child on a social media site. Again, these were statements of concern about the possibility of harm that could befall the child – not that actual abuse or neglect had occurred or was ongoing. The other allegations of abuse Whitesed refers to are unsubstantiated statements Whitesed made about Huddleston's alleged treatment of Whitesed, not his treatment of the child, which the trial court found meritless. *See L.W. v. L.B.*, 6th Dist. Lucas No. L-09-1309, 2010-Ohio-2796, ¶ 27 (in custody dispute between two parents "there was no allegation of abuse or neglect within the contemplation of R.C. 2151.281. As a result, the trial court was under no mandate to appoint a guardian ad litem").

**{¶22}** Whitesed cites no caselaw or statutory provision that requires the trial court to appoint a guardian ad litem pursuant to Juv.R. 4(B)(5) in a case involving the

allocation of parenting rights and responsibilities where there are no allegations of abuse, neglect or dependency. Her legal authority governs delinquency cases. *See In re Spradlin*, 140 Ohio App.3d 402, 2000-Ohio-2003, 747 N.E.2d 877 (4th Dist.) (juvenile delinquency proceedings under R.C. 2151.281(A)); *In re D.A.G.*, 4th Dist. Ross Nos. 13CA3366, 13CA3367, 2013-Ohio-3414 (juvenile delinquency proceedings under R.C. 2151.281(A)).

**{¶23}** Here, in a custody case between parents, R.C. 3109.04 applies and R.C. 3109.04(B)(1) and (2) provide that when the court is "making the allocation of the parental rights and responsibilities for the care of the children * * *  the court, in its discretion, may * * * interview * * * the involved children * * *. If the court interviews any child * * * [t]he court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem for the child." Here, the trial court did not conduct an interview of the child and therefore the provisions governing the appointment of a guardian ad litem under R.C. 3109.04(B) were not triggered. *Purvis v. Purvis,* 4th Dist. Adams No. 00CA703, 2002-Ohio-570 (because the trial court did not interview the child, it was not required to appoint a guardian ad litem under R.C. 3109.04(B)(2)(a)).

**{¶24}** Whitesed did not request a guardian ad litem and she did not object to the magistrate's decision not to appoint a guardian ad litem. "Ordinarily, to preserve a trial court error for appeal, an objection must be timely raised to the trial court, where the alleged error may be corrected, or else the objection is waived; it may not be raised for the first time on appeal. As the Ohio Supreme Court held, 'the fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected.' " (Citations omitted.)

*Wilson v. Wilson*, 4th Dist. Lawrence No. 09CA1, 2009-Ohio-4978, ¶ 11. "Appellate courts may, however, consider a forfeited argument using a plain-error analysis." *In the Matter of J.M.*, 4th Dist. Ross No. 18CA3633, 2018-Ohio-5374, ¶27. Before we can recognize plain error, Whitesed must establish that an error occurred, it was an obvious defect, and that it affected substantial rights, i.e. it must have affected the outcome of the trial. *Id.* at ¶ 28.

**{¶25}** Whitesed has not invoked the plain-error doctrine on appeal. "We generally will not craft a plain-error argument for an appellant who fails to do so." *Id.* at ¶ 66. Because Whitesed failed to present a plain-error argument on appeal, we will not create one for her. The record contains nothing to suggest that the trial court made an obvious error, that the outcome of the case would have differed, or that the case at bar is one of those extremely rare cases that warrants application of the plain-error doctrine.

**{¶26}** We overruled Whitesed's first assignment of error.

### B. Attorney's Withdrawal

**{¶27}** Whitesed contends that the trial court erred in adopting the magistrate's decision granting her attorney's motion to withdraw the morning of the trial. We review the trial court's decision for abuse of discretion.

> "An appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion standard." The trial court may adopt, reject, or modify the magistrate's decision. Civ.R. 53(D)(4)(b). When ruling on objections to the magistrate's decision, the trial court is "not required to follow or accept the findings or recommendations of its magistrate." Instead, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Accordingly, the trial

court reviews the magistrate's decision under a de novo standard of review. (Citations omitted.)

*Sheehan v. Sheehan,* 3d Dist. Defiance No. 4-19-25, 2020-Ohio-5300, ¶ 11. "Error, if any, committed by the trial court focuses not on the magistrate's findings or proposed decision, but rather on the trial court's actions." *Morford v. Morford*, 2018-Ohio-3439, 118 N.E.3d 937, ¶ 10 (11th Dist.) ("an abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact' "). Abuse of discretion means an unreasonable, arbitrary, or unconscionable use of discretion, or a view or action that no conscientious judge could honestly have taken. *Eichenlaub v. Eichenlaub*, 2018-Ohio-4060, 120 N.E.3d 380, ¶ 11 (4th Dist.).

{¶28} First, Whitesed has no right to an attorney in this type of custody proceeding. *T.S. v. A.T.*, 6th Dist. Lucas No. L-19-1296, 2020-Ohio-6871, ¶ 23. Therefore, cases concerning a parent's right to counsel in involuntary termination of parental rights proceedings are distinguishable. Second, Whitesed's attorney was present at trial to represent her – it was Whitesed who did not appear for the trial. Therefore, cases in which an attorney withdraws within days of the trial are inapplicable. *E.g., Wilson v. Wilson*, 154 Ohio App.3d 454, 2003-Ohio-4474, 797 N.E.2d 990 (3d Dist.) (client contacted magistrate, requested continuance, stated objections to grounds for her attorney's withdrawal, and appeared at the final hearing and requested a second extension). This is the key distinction: Whitesed's attorney did not leave her without representation at trial, she left her attorney without a client at trial.

{¶29} Prof.Cond.R. 1.16(b)(6) allows an attorney to withdraw from representation of a client where the representation "has been rendered unreasonably

difficult by the client." Under subpart (d), a lawyer must take steps "to the extent reasonably practicable" to protect a client's interest. Here, the withdrawal occurred because of Whitesed's failure to appear for trial and repeated disregard for the court's rules and procedures, including her purposeful failure to comply with court parenting orders. Thus, there were few "reasonably practicable" steps her attorney could take to protect her interests in a case which, at that point, was pending for nearly two years. In the meantime, the child had grown from a five-month-old infant to a two-year-old toddler.

{¶30} The trial court found that the record showed that her attorney stated that Whitesed was aware of the trial date and that they had spoken multiple times about it. Whitesed's own affidavit confirmed that she had spoken to her attorney in the days immediately prior to the hearing and provided a list of witnesses to be called at the hearing. The trial court also found that Whitesed's affidavit was evasive in that she stated she "did not receive notice of hearing," yet she did not allege that she was unaware of the hearing, and she admitted that her attorney told her about the final pretrial conference. The magistrate delayed the hearing for a half hour while they searched the courthouse for Whitesed. The trial court noted that the record showed that Whitesed repeatedly missed hearings, failed to comply with court orders, failed to respond to discovery for six months, failed to comply with court ordered deadlines, failed to timely complete a required psychological evaluation, refused to communicate on Our Family Wizard, and repeatedly interfered with or entirely prevented Huddleston's court-ordered parenting time. The trial court found:

> In a nutshell, the case history is replete with examples of Plaintiff's refusal
> to cooperate in the adjudication of this Complaint, a Complaint that she

had initiated.   * * * After reviewing the history of this case, this Court comes to the conclusion that Plaintiff knowingly chose to avoid the trial and knowingly chose not to oppose her attorney's withdrawal.

{¶31} When the plaintiff does not appear for trial, the trial court may dismiss the action for lack of prosecution under Civ.R. 41(B). *Sunshine Ltd. Partnership v. C.A.S.T.L.E. High School, Inc.*, 8th Dist. Cuyahoga No. 106245, 2018-Ohio-2298, ¶ 16. "Where a party's conduct is 'negligent, irresponsible, contumacious or dilatory,' it may provide grounds for a dismissal with prejudice for a failure to prosecute or to obey a court order." *Ransom v. Aldi, Inc.*, 2017-Ohio-6993, 95 N.E.3d 699, ¶ 28 (2d Dist.). Here, as sanctions for her conduct, the trial court could have dismissed her action under Civ.R. 41(B)(1). However, because Huddleston answered, asserted his own claim for the allocation of parental rights, and appeared for the trial, the trial court properly proceeded ex parte with the trial. *Sunshine Ltd. Partnership* at ¶ 16. " 'The Rules of Civil Procedure apply to custody proceedings in juvenile court except when they are clearly inapplicable.' *In re H.W.,* 114 Ohio St.3d 65, 868 N.E.2d 261, 2007–Ohio–2879, at ¶ 11 * * *." *Stevenson v. Kotnik*, 11th Dist. Lake No. 2010-L-063, 2011-Ohio-2585, ¶ 58 (applying Civ.R. 41(B) to juvenile custody proceeding); *Leonard v. Yenser,* 3d Dist. No. 10–2003–01, 2003–Ohio–4251 (applying Civ.R. 41(B) to a juvenile court proceeding).

{¶32} The trial court conducted an independent review of the record and determined that Whitesed had knowingly chose to avoid the trial and knowingly chose not to oppose her attorney's withdrawal. Based upon our review of the record, we find nothing unreasonable, arbitrary, or unconscionable about the trial court's adoption of the magistrate's decision granting Whitesed's attorney leave to withdraw.  As the magistrate stated, "if your client is not going to show, I am not going to make you sit there and

represent her." Even if this were an *involuntary* termination of parental rights case in which a parent has a right to counsel, under these circumstances, the trial court had a reasonable basis to find that Whitesed's dilatory tactics waived any objections to her attorney's withdrawal:

> Where a parent fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving notice of such, and fails to cooperate with counsel and the court, the court may infer that the parent has waived his or her right to counsel and may grant counsel's request to withdraw. To ascertain whether a waiver may be inferred, the court must take into account the total circumstances of the individual case, including the background, experience and conduct of the parent.

*In re A.S.*, 8th Dist. Cuyahoga No. 94098, 2010-Ohio-1441, ¶ 27; *In re B.M.,* 10th Dist. Franklin No. 09AP-60, 2009-Ohio-4846, ¶ 26 (Where a parent fails to appear for hearings and cooperate with counsel and the court, the court may infer that the parent has waived his or her right to counsel and may grant counsel's request to withdraw).

{¶33} We overrule Whitesed's second assignment of error.

### C. Notice of the Hearing

{¶34} For her final assignment of error, Whitesed contends that trial court erred in adopting the magistrate's decision finding she had constitutionally sufficient notice of the trial. She argues that the trial court misinterpreted her affidavit and erroneously concluded that she had notice of the hearing and decided to "skip the trial altogether, much like her behavior for the December 20, 2019 hearing."

{¶35} Due process requires both a notice and an opportunity to be heard:

> The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall * * * be deprived of life, liberty, or property, without due process of law." But "[f]or all its consequence, 'due process' has never been, and perhaps can never be, precisely defined. * * * Rather, the phrase expresses the requirement of 'fundamental fairness,'

a requirement whose meaning can be as opaque as its importance is lofty."

Although "due process" lacks a precise definition, courts have long held that due process requires both notice and an opportunity to be heard. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*            *            *

Generally, notice of new or rescheduled hearings is sent to the parent's attorney, as prescribed by Juv.R. 20. ***A parent's attorney's statement to the court that he or she communicated with the parent, who failed to appear, proves that the parent had constructive notice of the permanent custody hearing***. (Citations omitted.) (Emphasis added.)

*Matter of C.B.,* 2020-Ohio-5151, 161 N.E.3d 770, ¶ 10-11, 16 (4th Dist.). "Ohio courts have traditionally held that while some form of notice of a trial date is required to satisfy due process, an entry of the date of trial on the court's docket constitutes reasonable, constructive notice of that fact." *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 124, 502 N.E.2d 599, 604 (1986); *Clelland v. Cartman*, 11th Dist. Lake No. 2009-L-024, 2009-Ohio-6514, ¶ 27 ("the entry of the trial date upon the trial court's docket is sufficient to satisfy the requirements of due process because a party is responsible for keeping track of the status of her case").

**{¶36}** The record shows that the final custody hearing was scheduled in August 2020 for a November 2 and 3, 2020 final hearing. Notice of the hearing issued multiple times in this case to Whitesed's attorney of record and appeared on the docket. The order following the September 9, 2020 hearing on Huddleston's emergency motion summarizes what occurred at the hearing, which both Whitesed and her attorney attended. That order was served on her attorney and directed Whitesed to enroll in Our

Family Wizard, stated that the matter was set for a final hearing November 2 and 3, 2020, and ordered Whitesed to answer long overdue discovery.

{¶37} According to Whitesed's affidavit and filings in the court record, approximately six days prior to the hearing, Whitesed and her attorney discussed witnesses in preparation for the November 2, 2020 hearing – she provided him the names of four witnesses she wanted to have him call on her behalf. In her affidavit, she states that on October 27, 2020, she provided her attorney "with a list of the names and contact information of all the witnesses I wanted him to subpoena for the final hearing." The following day her attorney filed a subpoena for an Ashville police officer to appear on November 2, 2020 at 9:00 am for the hearing. Whitesed testified in her affidavit that she was communicating with her attorney on October 27, 28, and 29 prior to the November 2, 2020 hearing about the hearing, his need for payment of attorney fees, and his intention to seek to withdraw as her attorney. And, Whitesed stated that her attorney informed her of and she was available for the final pretrial hearing on October 16, 2020. Despite all of this activity and her knowledge of and participation in hearing preparation efforts, she claims she "did not *receive a notice* of hearing regarding the November 2, 2020 hearing." (Emphasis added.) *See Fendrich v. Fendrich,* 8th Dist. Cuyahoga No. 54840, 1989 WL 21431, *3 (where court's journal entries provided constructive notice of trial, affidavit which averred that party did not receive notice does not establish ground for relief).

{¶38} The day of the hearing, after Whitesed failed to appear and they could not locate her in the courthouse, the magistrate asked her attorney whether she had notice of the final hearing:

Q. And, this matter was set for hearing today at 9 o'clock, and Mr. DeBeneditto, did your client have notice of today's hearing?

A. She did.

Q. And, what notice did she have?

A. Well, I, I knew we spoke about this multiple times. I assume the court sent her notice as well, but yes, she is certainly aware of this morning's hearing.

Q. And she knew to be here today at 9 o'clock.

A. I believe so.

Q. And you had talked to her about having witnesses?

A. Yes.

Q. And she gave you witnesses?

A. That is correct.

Q. And some of those witnesses were her family members?

A. Yes.

Q. And, so they knew to be here also, or they were going to be called for a hearing?

A. Right.

**{¶39}** Based on our review of the record we find that the trial court did not act unreasonably, arbitrary, or unconscionably when it determined that Whitesed had constitutionally sufficient notice of the hearing and decided not to attend it. The trial court determined that her contention that she did not "receive a notice" is not the same as stating that she had no actual knowledge of the hearing date. The record shows that the clerk served multiple notices of the hearing date on Whitesed's attorney and he informed the magistrate that he had informed his client. The magistrate determined,

based upon Whitesed's attorney's representations, that Whitesed had notice of the hearing. The trial court conducted an independent review of the evidence as required by Juv.R. 40, considered Whitesed's affidavit, and determined that Whitesed was not credible and was not being completely forthright in her affidavit. The trial court, not the magistrate, is "the ultimate trier of fact." *State ex rel. Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶ 37; *In re A.S.,* 1st Dist. Hamilton No. C-180056, 2019-Ohio-2359, ¶ 20.

**{¶40}** The trial court did not violate Whitesed's constitutional rights when it determined that the magistrate properly proceeded ex parte with the custody hearing. Whitesed had constitutionally sufficient notice of the trial. We overrule the third assignment of error.

### IV.  CONCLUSION

**{¶41}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

# JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
Michael D. Hess, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**